UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

MICHAL KONOPKA and DRAGAN BOSOTINA, and on
behalf of themselves and all others similarly situated,
PLUMBERS UNION LOCAL NO. 1 OF THE UNITED
ASSOCIATION OF JOURNEYMEN AND
APPRENTICES OF THE PLUMBING AND FITTING
INDUSTRY OF THE UNITED STATES AND
CANADA,  TRUSTEES OF THE PLUMBERS LOCAL
UNION NO. 1 WELFARE FUND, TRADE EDUCATION
FUND, and 401(k) SAVINGS PLAN, TRUSTEES OF
THE UNITED ASSOCIATION NATIONAL PENSION
FUND, and TRUSTEES OF THE INTERNATIONAL
TRAINING FUND,

                            Plaintiffs,

                - against -

PACE PLUMBING CORP., PACE PLUMBING
DELAWARE CORP., THE PACE COMPANIES NEW
YORK, LLC, PACE FIELD SERVICES, LLC d/b/a PACE
MECHANICAL, and EAGLESTONE, LLC d/b/a
EAGLESTONE NY, LLC, and ATERIAN INVESTMENT
MANAGEMENT, LP d/b/a ATERIAN INVESTMENT
PARTNERS,

                        Defendants.

-----------------------------------------------------------------------X

**No.: 25 Civ. 811 (RER)(CLP)**

**FIRST AMENDED
CLASS ACTION
COMPLAINT**

Plaintiffs Michal Konopka and Dragan Bosotina, on behalf of himself and all others

similarly situated, by and through their attorneys Kessler Matura P.C. and the Sugar Law Center

for Economic and Social Justice, and Plaintiff Plumbers Union Local No. 1 of the United

Association of Journeymen and Apprentices of the Plumbing and Fitting Industry of the United

States and Canada (the "Union" or "Local One"), on behalf of their members, by and through its

attorneys Pitta LLP, Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education

Fund, and 401(k) Savings Plan (the "Local 1 Funds") Trustees of the United Association National

Pension Fund (the "UANPF"), and the Trustees of the International Training Fund ("ITF," together

with the UANPF, the "National Funds,") (the Local 1 Funds and National Funds, collectively, the "Funds"), by and through its attorneys Virginia & Ambinder, LLP, complaining of Defendants Pace Plumbing Corp., Pace Plumbing Delaware Corp., The Pace Companies New York, LLC, Pace Field Services LLC d/b/a Pace Mechanical, (collectively, "Pace" or the "Pace Defendants"), Eaglestone LLC d/b/a Eaglestone NY, LLC, and Aterian Investment Management, LP d/b/a Aterian Investment Partners, alleges as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs bring this action seeking monetary damages and affirmative relief based upon Defendants' violations of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101, *et seq*., and New York Worker Adjustment and Retraining Notification Act ("NY WARN Act"), N.Y. Lab. Law § 860, *et seq*., and other appropriate rules, regulations, statutes and ordinances.

2.    On February 6, 2025, Defendants terminated all of the Pace Defendants' employees – exceeding 300 individuals, including Plaintiffs Konopka and Bosotina, without sufficient written notice as required by the WARN Act and NY WARN Act (collectively, "WARN Acts"). As such, Plaintiff and all similarly situated employees seek to recover from Defendants their back wages and benefits.

3.    Plaintiffs bring this action as a putative class action, on behalf of the following "Class" of individuals:

> All former employees terminated without cause on or about February 6, 2025, or terminated, as a reasonably foreseeable consequence of the mass layoffs and/or plant closing, within 30 days of February 6, 2025, and who are affected employees under the WARN Acts (also referred to as, "Class Members.")

4.    Konopka, the Union, and the Funds bring this action on behalf of the following sub-class (the "Union Class"):

> All former employees terminated without cause on or about February 6, 2025, or terminated, as a reasonably foreseeable consequence of the mass layoffs and/or plant closing, within 30 days of February 6, 2025, who are affected employees under the WARN Acts, and were members of the Union (also referred to as, "Union Class Members.")

5.    Bosotina brings this action on behalf of the following sub-class (the "Non-Union Class"):

> All former employees terminated without cause on or about February 6, 2025, or terminated, as a reasonably foreseeable consequence of the mass layoffs and/or plant closing, within 30 days of February 6, 2025, who are affected employees under the WARN Acts, and who were not members of the Union (also referred to as, "Non-Union Class Members.")

## **JURISDICTION & VENUE**

6.    Jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 2104.

7.    This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

8.    Defendants do business in the State of New York and maintained a principal place of business at 41 Box Street, Brooklyn, New York 11222.

9.    The acts complained of occurred, in substantial part, at 41 Box Street, Brooklyn, New York 11222.

10.    Accordingly, this action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

*Plaintiff Michal Konopka*

11.     Plaintiff Michal Konopka is a resident of Bergen County, New Jersey.

12.     Konopka was employed by Defendant until February 6, 2025.

13.     Throughout his employment with Defendants, Konopka was employed as a Plumber and/or Foreman.

14.     Konopka worked at various jobsites throughout the New York City area.

15.     Konopka reported to and was employed out of Pace Plumbing's headquarters, located at 41 Box Street, Brooklyn, New York 11222.

16.     Konopka is an "affected employee" as defined by, *inter alia*, 20 C.F.R. § 639.3(e) and N.Y. Lab. Law § 860-a.

*Plaintiff Dragan Bosotina*

17.     Plaintiff Dragan Bosotina is a resident of Queens County, New York.

18.     Bosotina began his employment with Defendants in February 2018.

19.     Bosotina was employed by Defendant The Pace Companies New York, LLC until February 6, 2025.

20.     At the time of the termination, Bosotina was the Director of Billing and Account Receivable.

21.     In this role, Bosotina oversaw and processed the invoicing done by and payments received made out to Defendant The Pace Companies New York, LLC and its subsidiaries, including the Pace Defendants.

22.     Bosotina reported to and was employed out of Pace's headquarters, located at 41 Box Street, Brooklyn, New York 11222.

23.     Bosotina is an "affected employee" as defined by, *inter alia*, 20 C.F.R. § 639.3(e) and N.Y. Lab. Law § 860-a.

***Plaintiff Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada***

24.     The Union is a labor organization within the meaning of Section 2(5) of the Labor-Management Relations Act, 29 U.S.C. § 152(5) with a principal office at 50-02 Fifth Street, Long Island City, NY  11101.

25.     The Union is the exclusive bargaining representative under the National Labor Relations Act, 29 U.S.C. § 159(a), of approximately 6,000 journey-level and apprentice plumbers ("Plumbers") who work on residential, commercial, institutional, and other types of plumbing projects in New York City, including the Plumbers who were employed by Defendants on various construction projects in New York City.

26.     The construction projects on which the Plumbers employed by Defendants worked were governed by a collective bargaining agreement between Local 1 and the Association of Contracting Plumbers effective from July 1, 2023 through June 30, 2026 ("CBA").  The CBA requires employers bound by it to abide by terms and conditions of employment, including the payment to the Plumbers of minimum rates of pay and overtime pay and payment of contributions to various benefits funds on the Plumbers' behalf.

27.     On February 6, 2025, the Business Manager of Local 1, Paul O'Connor, received via email a letter informing the Union that "the entire business operations of Pace Plumbing Corporation located at 41 Box Street, Brooklyn, NY  11222 are completely shutting down, effective February 6, 2025."

28.     The Business Manager learned that same day from Local 1 members and others that all Pace Plumbing Corporation work at any and all construction projects ceased that day and

all of the Plumbers working for Pace Plumbing Corporation at any and all job sites were terminated on February 6, 2025.

29.    In the February 6, 2025 letter to the Business Manager of Local 1, Pace Plumbing Corporation acknowledged that its notice of the closure and mass layoff to the Union and the Plumbers was not in compliance with the federal WARN Act and the NY WARN Act, having given zero days' notice of the mass layoff and closing.

30.    Local 1 is the "representative" of the Plumbers who were affected by Defendants' mass layoff and plant closing within the meaning of the WARN Act, 29 U.S.C. § 2101(a)(4) and was entitled to 60-days advance written notice of the termination of the Plumbers employed by Defendants.  Local 1 is the "representative" of the Plumbers who were affected by Defendants' mass layoff and plant closing within the meaning of the NY WARN Act, NYLL § 860-a(7) and was entitled to 90-days advance written notice of the termination of the Plumbers employed by Defendants.

***Plaintiffs Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Funds, and 401(k) Savings Plan, Trustees of the United Association National Pension Funds, and Trustees of the International Training Fund***

31.    Plaintiffs Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, and 401(k) Savings Plan are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c)(5) of the LMRA, 29 U.S.C § 186(c)(5).  The Funds are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C § 1002(3), and are administered at 50-02 5th Street, Long Island City, New York 11101.

32.    Plaintiff Trustees of the United Association National Pension Fund are employer and employee trustees of a multiemployer employee pension benefit plan as those terms are defined in sections 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2) and (37). The UANPF is

established and maintained pursuant to a trust agreement between various employers within the plumbing industry and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada and its affiliated local unions including Local 1. The UANPF is administered at 103 Oronoco Street, Alexandria, Virginia 22314.

33.    Plaintiff Trustees of the International Training Fund are employer and employee trustees of a multiemployer employee welfare benefit plan as those terms are defined in sections 3(1) and 3(37) of ERISA, 29 U.S.C. §§ 1002(1) and (37). The ITF is established and maintained pursuant to a trust agreement between various employers within the plumbing industry and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada and its affiliated local unions including Local 1. The ITF is administered at 103 Oronoco Street, Alexandria, Virginia 22314.

34.    Under the CBA, employers agree "to be bound by the provisions of the Trust Agreements pertaining to Pension, (including the [UANPF],…[and the] Plumbers Local Union No. 1 Welfare…Trade Education…401(k) Savings Plan and *any other established funds…*" (the "Trust Agreements") (emphasis added).

35.    On December 31, 2019, the Additional Security Benefit Fund ("ASB-C Fund") was merged into the Welfare Fund.

36.    The Trust Agreements permit the Funds to establish policies, rules, and procedures for the purpose of collecting unpaid contributions to the various benefit funds.

37.    Pursuant to the Trust Agreements, the Local 1 Funds adopted a Policy for the Collection of Delinquent Fringe Benefit Employer Contributions (the "Fringe Benefit Collection Policy") and a Joint Policy for Collection of Delinquent Employee Contributions and Participant

Amounts (the "401(k) Savings Plan Collection Policy," together with the Fringe Benefit Collection Policy, the "Local 1 Fund Collection Policies").

38.     Similarly, pursuant to the Trust Agreements, the National Funds promulgated Delinquency procedures for the collection of contributions due to the UANPF and a Collection Policy/Procedures for the collection of contributions due to the ITF (collectively, the "National Fund Collection Policies," together with the Fringe Benefit Collection Policy and the 410(k) Savings Plan Collection Policy, the "Collection Policies").

39.     The CBA, Trust Agreements, and Collection Policies require employers to make specified hourly benefit contributions to the Funds, and to remit other specified amounts, to the Funds in connection with all plumbing work performed under the terms of the CBA on behalf of the employers' employees within the five boroughs of the City of New York ("Covered Work").

40.     The Trust Agreements and Collection Policies empower the Plaintiffs' Trustees to take all necessary and reasonable actions to recover unpaid benefit contributions.

41.     Upon information and belief, on February 6, 2025, the entire business operations of Pace Plumbing Corporation located at 41 Box Street, Brooklyn, NY  11222 are completely shutting down, effective February 6, 2025.

42.     Upon information and belief, on February 6, 2025, all Pace Plumbing Corporation work at any and all construction projects ceased that day and all of the Plumbers working for Pace Plumbing Corporation at any and all job sites were terminated on February 6, 2025.

43.     Upon information and belief, Pace Plumbing Corporation acknowledged that its notice of the closure and mass layoff was not in compliance with the federal WARN Act and the NY WARN Act, having given zero days' notice of the mass layoff and closing.

44.     The Funds are a "representative" of the Plumbers[1] who were affected by Defendants' mass layoff and plant closing within the meaning of the WARN Act, 29 U.S.C. § 2101(a)(5), by virtue of the Funds being a third-party beneficiary of the CBA negotiated by Local 1.  The Funds are also a "person" harmed by the Defendants' mass layoffs to the extent of the contributions that were owed to the Funds on behalf of the Plumbers within the meaning of the WARN Act for the required notice period.  29 U.S.C. § 2104(a)(1)(B), (5).  The Funds are the "representative" of the Plumbers[2] who were affected by Defendants' mass layoff and plant closing within the meaning of the NY WARN Act, NYLL § 860-a(7) by virtue of the Funds being a third-party beneficiary of the CBA negotiated by Local 1.  The Funds are also a "person" harmed by the Defendants' mass layoffs to the extent of the contributions that were owed to the Funds on behalf of the Plumbers within the meaning of the NY WARN Act for the required notice period. NY WARN Act, § NYLL 860-b.

***Defendants Pace Plumbing Corp. and Pace Plumbing Delaware Corp.***

45.     Defendant Pace Plumbing Corp. was a domestic corporation, organized and existing pursuant to the laws of New York State.

46.     On February 6, 2025, Pace Plumbing Corp.'s principal place of business was located in 41 Box Street, Brooklyn, New York 11222.

47.     On February 6, 2025, Pace Plumbing Corp.'s headquarters were located at 41 Box Street, Brooklyn, New York 11222.

48.     Pace Plumbing Corp. did business as The Pace Companies, Pace Plumbing, and Pace.

---

[1]     In so far as it relates to benefit contributions and recovery of the same.

[2]     In so far as it relates to benefit contributions and recovery of the same.

49.     Pace Plumbing Corp. filed "The Pace Companies" as its assumed name with State of New York's Department of State (the "Department of State") in 2016.

50.     Pace Plumbing Corp. filed "Pace Plumbing" as its assumed name with the Department of State in 2015.

51.     Pace Plumbing Corp. changed its status with the Department of State from active to inactive effective February 7, 2025.

52.     Pace Plumbing Corp. reported to the Department of State that its reason for the status change was that it was "merged out of existence."

53.     Pace Plumbing Delaware Corp. is a Delaware corporation.

54.     Pace Plumbing Delaware Corp.'s initial Department of State filing occurred on February 5, 2025.

55.     The effective date for Pace Plumbing Delaware Corp.'s initial Department of State is February 7, 2025.

56.     Upon information and belief, Pace Plumbing Delaware Corp.'s principal place of business is 41 Box Street, Brooklyn, New York 11222.

57.     Pace Plumbing Delaware Corp. reported to the Department of State that the Post Office address to which the Secretary of State shall mail a copy of any process the corporation served upon the Secretary of State by personal delivery is 41 Box Street, Brooklyn, New York 11222.

58.     On February 7, 2025, Pace Plumbing Delaware Corp. filed a certificate of merger with the Department of State indicating that it is the surviving entity of merger with Pace Plumbing Corp.

59.    Upon information and belief, Defendant Pace Plumbing Corp. employed more than 200 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

60.    Pace Plumbing Corp. reported to the New York State Department of Labor that it started and ended its closure on February 6, 2025.

61.    Pace Plumbing Corp. reported to the New York State Department of Labor that it employed 214 individuals.

62.    Pace Plumbing Corp. reported to the New York State Department of Labor that its closure affected 214 workers.

63.    Pace Plumbing Corp. reported to the New York State Department of Labor that its point of contact was Andrea Bondietti, Senior Director of Human Resources.

64.    The worksite of 41 Box Street, Brooklyn, New York 11222 is a "single site of employment" as defined by, *inter alia*, 20 C.F.R. § 639.3(i).

***Defendants The Pace Companies, LLC***

65.    Defendant The Pace Companies, LLC was a foreign corporation, authorized to do business in New York State.

66.    The Pace Companies, LLC was formed on March 22, 2019.

67.    The Pace Companies, LLC is a Delaware limited liability company.

68.    The Pace Companies, LLC's predecessor was The Pace Companies New York, Inc., which was listed as inactive as of March 26, 2019, with the Department of State, Division of Corporations.  The Pace Companies New York, Inc. was merged out of existence.

69.    On February 6, 2025, The Pace Companies, LLC's principal place of business was located in 41 Box Street, Brooklyn, New York 11222.

70.     On February 6, 2025, The Pace Companies, LLC's headquarters were located at 41 Box Street, Brooklyn, New York 11222.

71.     The Pace Companies, LLC did business as The Pace Companies and Pace.

72.     The Pace Companies, LLC changed its status with the Department of State from active to inactive effective February 7, 2025.

73.     The Pace Companies, LLC reported to the New York State Department of Labor that it started and ended its closure on February 6, 2025.

74.     The Pace Companies, LLC reported to the New York State Department of Labor that it employed 39 individuals.

75.     The Pace Companies, LLC reported to the New York State Department of Labor that its closure affected 39 workers.

76.     The Pace Companies, LLC reported to the New York State Department of Labor that its address is 41 Box Street, Brooklyn, New York 11222.

77.     The Pace Companies, LLC reported to the New York State Department of Labor that its point of contact was Andrea Bondietti, Senior Director of Human Resources

***Defendants Pace Field Services, LLC***

78.     Defendant Pace Field Services, LLC was a foreign corporation, authorized to do business in New York State.

79.     Pace Field Services, LLC was formed on December 7, 2020.

80.     Pace Field Services, LLC is a Delaware limited liability company.

81.     On February 6, 2025, Pace Field Services, LLC's principal place of business was located in 41 Box Street, Brooklyn, New York 11222.

82.     On February 6, 2025, Pace Field Services, LLC's headquarters were located at 41 Box Street, Brooklyn, New York 11222.

83.     Pace Field Services, LLC did business as Pace and Pace Mechanical

84.     Pace Field Services, LLC employed non-union employees for the Pace Defendants.

85.     Pace Field Services, LLC reported to the New York State Department of Labor that it started and ended its closure on February 6, 2025.

86.     Pace Field Services, LLC reported to the New York State Department of Labor that it employed 57 individuals.

87.     Pace Field Services, LLC reported to the New York State Department of Labor that its closure affected 57 workers.

88.     Pace Field Services, LLC reported to the New York State Department of Labor that its address is 41 Box Street, Brooklyn, New York 11222.

89.     Pace Field Services, LLC reported to the New York State Department of Labor that its point of contact was Andrea Bondietti, Senior Director of Human Resources.

### Defendant Eaglestone, LLC

90.     Defendant Eaglestone, LLC is a Delaware corporation doing business in the State of New York.

91.     Defendant Eaglestone, LLC formed in March 20219.

92.     Defendant Eaglestone, LLC reported to the Department of State that its foreign legal name is Eaglestone, LLC.

93.     Defendant Eaglestone, LLC reported to the Department of State that its fictitious name is Eaglestone NY, LLC.

94.     Defendant Eaglestone, LLC's entity status was listed as "active" on February 6, 2025, and on the date of this Complaint.

95.     Defendant Eaglestone, LLC's principal place of business is located at 551 5th Avenue, 9th Floor, New York, NY 10176.

***Defendant Aterian Investment Management, LP***

96.     Defendant Aterian Investment Management, LP, is a Delaware corporation doing business in the State of New York.

97.     Aterian Investment Management, LP was Eaglestone, LLC's parent company.

98.     Aterian Investment Management, LP had an ownership interest in Eaglestone, LLC.

99.     Aterian Investment Management, LP reported to the Department of State that the address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery is as follows:

Name:  Micahel Fieldstone; c/o Aterian Investment Partners

Address:  1700 Broadway, 38th Floor, New York, NY, United States, 10019

100.    Aterian Investment Management, LP reported to the Department of State that the Registered Agent Name and Address is as follows:

Name:  Micahel Fieldstone; c/o Aterian Investment Partners

Address:  1700 Broadway, 38th Floor, New York, NY, United States, 10019

101.    Aterian Investment Management, LP holds itself out as is an operationally-focused middle market private equity firm focused on investing in businesses that are financially or operationally challenged.

102.    Aterian Investment Management, LP publicly states that it invests in turnarounds, distressed situations, restructurings, carve-outs, underperformers or other complex investment situations in middle market companies generating $25 million to $500 million of revenue.  After making an investment, Aterian Investment Management, LP, in partnership with portfolio company management teams, seeks to relentlessly focus on the critical growth, cost and liquidity initiatives of a business in an effort to drive value creation.

103.    Aterian Investment Management, LP's website list Eaglestone, LLC as an investment.

104.    Aterian Investment Management, LP's website describes Eaglestone, LLC as follows:

> Eaglestone (a holding company comprised of Pace and PJ Mechanical, and future acquisitions in the region) is a market leading provider of plumbing, HVAC/mechanical, fire sprinkler and related MEPS services. Eaglestone is a turnkey provider of initial design, drafting, installation, retrofit and back-end service and maintenance / repair services, as well as services critical to building automation and energy efficiency trends. Eaglestone services a diversified set of attractive end-markets in the New York City region.

105.    Aterian Investment Management, LP's website states, as of March 10, 2024, that its investment date in Eaglestone is April 2019 and its exit date is current.

106.    Michael Fieldstone is a Co-Founder and Partner of Aterian Investment Management, LP.

***Defendants***

107.    Defendants employed and terminated the Class Members.

108.    Defendants issued Class Members letters explaining the termination on February 6, 2025, which listed Andrea Bondietti as the signatory of the letter and instructed the Class

Members to contact Bondietti for further information.  *See* Ex. A (Pace Plumbing Letter), Ex. B (Pace Field Services Letter).

109.    Defendants held Bondietti out as the Senior Vice President of Human Resources, with the mailing address of 551 5th Avenue, 9th Floor, New York, NY 10176.

110.    Defendant Eaglestone, LLC's website states that Eaglestone's headquarters are at 551 5th Avenue, 9th Floor, New York, NY 10176.

111.    Defendant Eaglestone, LLC's website states the following at the bottom: "© 2025 EAGLESTONE LLC. ALL RIGHTS RESERVED."

112.    Upon information and belief, Defendant Eaglestone NY, LLC has been or is also known as Eagelstone, LLC or otherwise does business as Eaglestone, LLC.

113.    Upon information and belief, Defendant Eaglestone, LLC has been or is also known as Eagelstone NY, LLC or otherwise does business as Eaglestone NY, LLC.

114.    Upon information and belief, Defendant Eaglestone, LLC is the parent company of Eaglestone Holdings, LLC, Eaglestone Intermediate Holdings, LLC, Pace Intermediate, LLC, The Pace Companies New York, LLC, Pace Field Services, LCC, Pace Plumbing Corp., Pace Plumbing Delaware Corp., and other entities.  *See* Ex. C (Eaglestone Structure).

115.    The Pace Defendants had centralized operations.

116.    The employees of The Pace Companies New York, LLC, including Bosotina, collected payments for payments for the Pace Defendants.

117.    The employees of The Pace Companies New York, LLC made payments for the Pace Defendants.

118.    The employees of The Pace Companies New York, LLC issued the payroll to the Class Members for the Pace Defendants.

119.    The employees of The Pace Companies New York, LLC and Eaglestone, LLC handled human resources matters for Pace Defendants and Pace Defendants.

120.    The Pace Defendants shared office space.

121.    The Pace Defendants shared employees.

122.    The employees of the Pace Defendants and Eaglestone, LLC shared employees.

123.    For example, the Pace Defendants and Eaglestone, LLC had a centralized IT department.  The IT professionals employed by Eaglestone, LLC provided services to the executives and employees of the Pace Defendants and Eaglestone, LLC.  The IT professionals employed by Eaglestone, LLC worked from Eaglestone, LLC's Manhattan offices and 41 Box Street.

124.    The Pace Defendants and Eaglestone, LLC employees were required to return any Discrimination and Harassment Complaint Forms to the Chief Human Resources Officer of Eaglestone, LLC.

125.    Eaglestone, LLC promulgated a uniform set of workplace rules, memorialized in a single handbook, for the Pace Defendants and Eaglestone, LLC.

126.    Jason Richards, as an "Officer" of the Pace Defendants and Easlestone, LLC, as well as Eaglestone Intermediate Holdings, LLC, Eaglestone Shared Services, LLC, Pace Intermediate, LLC, and Pace Intermediate, LLC, among others, signed an General Assignment for the Benefit of Creditors document on these entities' behalf.

127.    Aterian has published the following, on its website, touting the transition of Jason Ricards to the CEO role at Eaglestone, LLC:

> "Four years ago, with the partnership of Aterian Investment Partners, my idea became a reality. Since then, our family of companies has grown in size, in breadth of services, in sophistication and in market share. I cannot adequately

convey the level of gratitude that I feel for everyone that has been instrumental in getting us to where we are today. I am confidently turning over the position of leadership to Eaglestone's new CEO, Jason Richards, in shepherding Eaglestone and our family of companies to new heights," stated Andru Coren.

"I am excited to be working with the Aterian and Eaglestone teams", said Jason Richards. "They have built a solid foundation and I look forward to leading and growing the future of the company."

128.    Aterian has published the following, on its website, touting its relationship with the

Pace Defendants and Eaglestone, LLC:

Andru Coren, CEO and second-generation owner, stated, "I am very excited to form a partnership with the Aterian team on Pace's next phase of growth. I am appreciative of all the efforts of the Company's COO, Adam Levy, as well as the rest of the Pace leadership team in transforming Pace over the last 50 years into what it is today.  I believe the partnership with Aterian will provide Pace even more opportunities to pursue growth initiatives while still maintaining the highest quality contracting services to our customers."

Michael Fieldstone, Co-Founder & Partner at Aterian, commented, "We are excited to partner with Andru Coren, Adam Levy and the rest of the Pace team. We believe Pace is a unique company with a highly talented team, having been able to navigate New York City's everchanging real estate landscape – from commercial buildings to new residential high rises to hotels and institutional-government funded work. We look forward to supporting management in its strategic growth initiatives while preserving the Company's core values and family-like culture."

Daniel Phan, Principal at Aterian, commented, "Pace is a premier contractor in the New York City market and has strategically evolved into one of the few companies that provides sole-sourced expertise across multiple areas of trade. Aterian demonstrated its solutions-oriented approach and ability to be creative in our partnership with Andru and Adam, and look forward to supporting the Company in its next phase of growth."

129.    Defendants, separately and jointly, controlled the terms and conditions of Class Members' employment.

130.    In news announcements found on Defendant Eaglestone, LLC's website, Defendant Eaglestone, LLC holds itself out as a "comprised of best-in-class MEPS sub-contractors providing superior workmanship and project management services across all commercial and residential construction platforms.

131.    As of the date of this Complaint, Defendant Eaglestone, LLC's website lists The Pace Companies as an affiliated company and states the following:

> The Pace Companies is an Eaglestone affiliated company, Licensed in New York City, New Jersey, Long Island and Westchester County. They are able to provide complete coverage for all phases of Plumbing, Fire Protection and HVAC within the Tri State area. The Pace Companies has been affiliated with some of the most high profile projects in the New York City metropolitan area.

132.    As of the date of this Complaint, Defendant Eaglestone, LLC's website links back to The Pace Companies' website.

133.    Defendant Eaglestone NY, LLC reported to the Department of State that the Post Office address to which the Secretary of State shall mail a copy of any process the corporation served upon the Secretary of State by personal delivery is 41 Box Street, Brooklyn, New York 11222.

134.    At all times hereinafter mentioned, Defendants, separately and jointly, were "employers," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a), and continued to operate as a business until they decided to order mass layoffs or plant closings described in this Complaint

135.   At all times hereinafter mentioned, Defendants, separately and jointly, individuals or private business entities defined as "employer" under the NY WARN Act and continued to operate as a business until it ordered a mass layoff or plant closing described in this Complaint as defined by N.Y. Lab. Law §§ 860-A(3),(4).

## FACTUAL ALLEGATIONS

### *The Plant Closing*

136.   Until February 6, 2025, Defendants employed over 310 Class Members at 41 Box Street, Brooklyn, New York 11222:

    a.   The Pace Companies New York, Inc.: 39 affected workers.

    b.   Pace Field Services, LLC: 57 affected workers.

    c.   Pace Plumbing Corporation: 214 affected workers.

137.   On February 6, 2025, Defendants closed the business operations of Eaglestone, LLC and the Pace Defendants.

138.   Defendants terminated about 310 employees at the facility, including Plaintiffs Konopka and Bosotina, without at least 60-days advance written notice.

139.   Defendants advised Plaintiffs Konopka and Bosotina and other Class Members of their termination on a Zoom conference meeting.

140.   Defendants also sent Plaintiffs and the Class Members letters.  *See* Exs. A-B.

141.   Defendants terminated Plaintiffs Konopka and Bosotina and the other similarly situated former employees without cause on their part.

142.   Defendants made the decision to terminate the employment of Plaintiff and the other similarly situated former employees.

***Defendants' Deficient Notice***

143.    Defendants terminated Plaintiff Konopka's and Bosotina's employment as part of a mass layoff or a plant closing, as defined by 29 U.S.C. § 2101(a)(2)-(3) and NYLL § 860-a(4), (6), for which they were entitled to receive at least 60-days advance written notice under the WARN Acts.

144.    On the day of the termination, Defendants sent letters to the Class Members advising them of the termination, which was the "result of a plant closing" in which "all employees working for [the Pace Defendants] will be terminated permanently on the Shut Down Date [February 6, 2025] or within the 14-day period starting on that Shut Down Date." *See* Exs. A-B.

145.    Although Defendants blame the sudden termination of everyone's employment on their attempts to raise capital and/or the sudden loss of funding, notice could have been provided without jeopardizing opportunities to raise capital and the loss of any funding was a foreseeable consequence of the Defendants' owing their lender significant sums of money for an extended period of time and/or other reasonably foreseeable and known business circumstances.

146.    In or around July 2019, The Pace Defendants and Eaglestone, LLC, borrowed money from BMO Bank, N.A.  *See* Ex. D (Victor Decl.).

147.    Thereafter, the credit agreement with BMO was amended numerous times.  *Id*.

148.    The Pace Defendants and Eaglestone, LLC report experiences industrial, operational, and financial hurdles by no later than about May 2024.

149.    The Pace Defendants and Eaglestone, LLC report significant project losses began occurring at this time.

150.    The Pace Defendants and Eaglestone, LLC report that, thereafter, it faced additional challenges, including tax liabilities and litigation claims.

151.    By no later than August 2024, Defendants began exploring selling parts of its business.

152.    For instance, Defendants sold closed on the sale of (a) Solar Energy Systems, LLC in December 2024; (b) 360 Fire Prevention LLC in December 2024; (c) entities related to P.J.M. Intermediate, LLC on or around January 24, 2025; and (d) entities related to CET Acquisition Holdings, LLC on or around February 5, 2025.

153.    Class Members were also interested in purchasing parts of Defendants' business. For example, a Class Member offered to buy a division of Defendants' business in or around August 2024.  Upon information and belief, Aterian Investment Management, LP and Fieldstone were apprised of his offer.  Defendants, however, did not sell the division to the Class Member, rather, he was informed that the decision not to sell the division was outside the control of The Pace Defendants and Eaglestone, LLC.

154.    Upon information and belief, in or about 2024, Defendants, in consultation with BMO, brought in consultants from Portage Point Partners, Garrett Spriggs and Mark Burger, to assist with running Defendants' business.

155.    Fieldstone, Spriggs, and Burger were all involved in the day-to-day and financial decisions of the Pace Defendants and Eaglestone, LLC.

156.    Fieldstone, Spriggs, and Burger consulted with Eaglestone, LLC and the Pace Defendants executives and employees on a weekly basis to decide what and who to pay.

157.    Fieldstone, Spriggs, and Burger had meetings with Eaglestone, LLC and the Pace Defendants' executives and employees to seek subcontractors to take on jobs being handled by Eaglestone, LLC and the Pace Defendants.

158.    Fieldstone, Spriggs, and Burger had meetings with Eaglestone, LLC and the Pace Defendants' executives and employees to make decisions about the work Class Members were performed.

159.    Fieldstone, Spriggs, and Burger called upon employees and executives of Eaglestone, LLC and the Pace Defendants to provide them with data and information related to the operations of Eaglestone, LLC and the Pace Defendants.  This includes information on the cost of outstanding work and work that had been completed on various projects, contract terms, the subcontractors working with Defendants, and billing and collection status of jobs.

160.    Spriggs and Burger regularly visited the Pace Defendants' offices at Box Street.

161.    Fieldstone, Spriggs, and Burger were copied on various operations emails.

162.    For the months leading up to the closure of Eaglestone, LLC and the Pace Defendants, the CEO of Eaglestone, LLC, Richards, reported to Fieldstone, Spriggs, and Burger.

163.    Richards advised the employees of Eaglestone, LLC and the Pace Defendants that various decisions were out of his control, as they were determined by "corporate" – referring to Fieldstone, Spriggs, and Burger.

164.    The CFO of the Pace Defendants, Derrick Flanagan, advised the employees of Eaglestone, LLC and the Pace Defendants that various decisions were out of his control, as they were determined by "corporate" – referring to Fieldstone, Spriggs, and Burger.

165.    Upon information and belief, Fieldstone, Spriggs, and Burger were involved in the decisions to sell off various parts of Defendants' business.

166.    Upon information and belief, Fieldstone, Spriggs, and Burger were involved in and influenced the decision to terminate the Class Members employment and disregard the obligations of the WARN Acts.

167.    The Pace Defendants and Eaglestone, LLC contacted Development Specialists, Inc. "regarding the potential for an assignment, and after participating in an interview conducted by the Assignors and its professionals[.]" Ex. D (Victor Decl.)

168.    The Pace Defendants and Eaglestone, LLC retained the services to "evaluate and prepare for a possible assignment for the benefit of creditors, in which DSI's affiliate would serve as the assignee." *Id*.

169.    The Pace Defendants and Eaglestone, LLC, and related assignors, paid DSI a retainer for these services of $75,000.

## CLASS ALLEGATIONS

170.    Plaintiffs brings the First and Second Causes of Action on their own behalf and on behalf of those similarly situated, pursuant to Fed. R. Civ. P. 23(a)-(b), 29 U.S.C. § 2104(a)(5), and N.Y. Lab. Law § 860-g(7).

171.    The persons in the Class are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are over 300 individuals in the Class.

172.    There are questions of law and fact common to this Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a.  Whether Defendants employed Plaintiff and the Class within the meaning of the WARN Acts;

    b.  Whether Defendants terminated the employment of the Plaintiffs Konopka and Bosotina and the Class without cause on their part and without giving them 60-days advance written notice in violation of the federal WARN Act;

    c.  Whether Defendants terminated the employment of the Class Representatives and the Class without cause on their part and without giving them 90-days advance written notice in violation of the NY WARN Act; and

d.   Whether Defendant unlawfully failed to pay Plaintiffs Konopka and Bosotina and the Class 60-days wages and benefits as required by the WARN Acts;

e.   The proper measure of damages sustained by Plaintiffs Konopka and Bosotina and the Class; and

f.   Whether Defendants should be enjoined from such violations in the future.

173.   Plaintiffs will fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.

174.   Plaintiffs are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

175.   A class is superior to other available methods for the fair and efficient adjudication of the controversy, where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.  The damages sustained by individual class members are small, compared to the expense and burden of individual prosecution of this litigation.  Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

176.   Further, Plaintiffs Konopka and Bosotina and the Class have been equally affected by Defendants' failure to provide the requisite advance notice of termination or compensation pursuant to the WARN Acts.

177.   Defendants acted or refused to act on grounds generally applicable to Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class was a whole.

178.   Plaintiffs intend to send notice to all members of the Class to the extent required by Rule 23.

### FIRST CAUSE OF ACTION
(On behalf of Plaintiffs and the Class)
WARN Act Violations

179.    Plaintiffs reallege and incorporate by reference all preceding allegations.

180.    Defendants ordered mass layoffs and/or plant closings at the site, as that term is defined by 29 U.S.C. § 210l(a)(2) and 28 CFR § 639.3(i).

181.    The mass layoffs or plant closing at the site resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2) for at least 50 of Defendants' employees as well as over 33 percent of Defendants' workforce at the site, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2l01(a)(8).

182.    Plaintiffs and Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Defendants at the site.

183.    Plaintiffs and Class Members are "affected employees" of Defendants, within the meaning of 29 U.S.C. § 210l(a)(5).

184.    Defendants were required by the WARN Act to give Plaintiffs and the Class Members at least 60-days advance written notice of their terminations.

185.    Defendants failed to give Plaintiffs and Class Members written notice that complied with the requirements of the WARN Act.

186.    Plaintiff and the Class Members are "aggrieved employees" of Defendants as that term is defined in 29 U.S.C. § 2104 (a)(7).

187.    On information and belief, the rate of pay and benefits that were being paid by Defendants to each Class Member at the time of their termination is contained in Defendants'

records, as such, Plaintiffs is unable to state at this time the exact amount due and owing to him and the Class.

188.    Defendants failed to pay Plaintiffs and each Class Member their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and failed to make benefit contributions and provide COBRA and other benefits for 60 days from and after the dates of their respective terminations.

189.    As a consequence of Defendants' violation of the WARN Act, alleged above, Plaintiffs and the Class incurred damages and Defendants are indebted to them in the amount of the their respective unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, benefit contributions, pension, 401(k) contributions, COBRA, and other employee benefits for 60 days from and after the dates of their respective terminations, and equitable relief as the Court deems just and proper.

190.    Plaintiffs also seek attorneys' fees, and costs to be paid by Defendants as provided by the WARN Act.

## SECOND CAUSE OF ACTION
(On behalf of Plaintiffs and the Class)
NY WARN Act Violations

191.    Plaintiffs reallege and incorporate by reference all preceding allegations.

192.    Defendants ordered mass layoffs and/or plant closings at the site, as that term is defined by 29 U.S.C. § 210l(a)(2) and 28 CFR § 639.3(i).

193.    The mass layoffs or plant closings at the Site resulted in "employment losses," as that term is defined by of N.Y. Lab. Law § 860-a(2) and 12 N.Y.C.R.R. § 921-1.1(f), for at least 25 of Defendants' employees as well as over 33 percent of Defendants' workforce at the site,

excluding "part-time employees," as that term is defined by N.Y. Lab. Law § 860-a(5) and 12 N.Y.C.R.R. § 921-1.1(f).

194.    Plaintiffs and Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Defendants at the site.

195.    Plaintiffs and Class Members are "affected employees" of Defendants, within the meaning of N.Y. Lab. Law § 860-a(1) and 12 N.Y.C.R.R. § 921-1.1(a).

196.    Defendants were required by the NY WARN Act to give Plaintiffs and the Class Members at least 90-days advance written notice of their terminations.

197.    Defendants failed to give Plaintiffs and Class Members written notice that complied with the requirements of the NY WARN Act.

198.    On information and belief, the rate of pay and benefits that were being paid by Defendants to each Class Member at the time of their termination is contained in Defendants' records, as such, Plaintiffs is unable to state at this time the exact amount due and owing to him and the Class.

199.    Defendants failed to pay Plaintiffs and each Class Member their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 90 days following their respective terminations, and failed to make benefit contributions, pension, and 401(k) contributions and provide COBRA and other employee benefits for 90 days from and after the dates of their respective terminations.

200.    As a consequence of Defendants' violation of the WARN Act, alleged above, Plaintiffs and the Class incurred damages and Defendants are indebted to them in the amount of the their respective unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued

vacation pay, benefit contributions, pension, and 401(k) contributions, COBRA, and other employee benefits for 90 days from and after the dates of their respective terminations, and equitable relief as the Court deems just and proper.

201.    Plaintiff also seeks attorneys' fees, and costs to be paid by Defendants as provided by the NY WARN Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

a.  Certification of this action as a class action under Rule 23;

b.  Designation of Plaintiff as the Class Representative;

c.  Appointment of the Plaintiff's Counsel as Class Counsel;

d.  A judgment in favor of Plaintiff and the other similarly situated former employees equal to the sum of: their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, benefit contributions, pension, and 401(k) contributions, COBRA, and other employee benefits, for statutorily-required period of time, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Acts; and

e.  For further relief as this Court deems just and equitable.

Dated: Melville, New York
       March 12, 2025

Respectfully submitted,

| | | |
|---|---|---|
| _Garrett Kaske_ (signature) | /s/ _Jane Lauer Barker_ | /s/ Adrianna R. Grancio |
| Garrett Kaske | Jane Lauer Barker | Adrianna R. Grancio |
| | | |
| KESSLER MATURA, P.C. | PITTA LLP | VIRGINIA & AMBINDER, LLP |
| Troy L. Kessler | Jane Lauer Barker | Charles R. Virginia, III |
| Garrett Kaske | 120 Broadway, 28th Floor | Adrianna R. Grancio |
| 534 Broadhollow Rd, Ste 275 | New York, NY 10271 | 40 Broad Street, 7th Floor |
| Melville, New York 11747 | (tel.) 212-652-3828 | New York, NY 10004 |
| (631) 499-9100 | (fax) 212-652-3891 | (212) 943-9080 |
| tkessler@kesslermatura.com | jbarker@pittalaw.com | cvirginia@vandallp.com |
| gkaske@kesslermatura.com | | agrancio@vandallp.com |

SUGAR LAW CENTER
FOR ECONOMIC &
SOCIAL JUSTICE
John C. Philo*
Anthony D. Paris*
4605 Cass Ave., 2nd Floor
Detroit, Michigan 48201
(313) 993-4505
jphilo@sugarlaw.org
tparis@sugarlaw.org
*pro hac vice application
forthcoming

**Attorneys for Plaintiffs
Michal Konopka and
Dragan Bosotina and the
Putative Class**

**Attorneys for Plaintiff
Plumbers Union Local No. 1
of the United Association of
Journeymen and
Apprentices of the Plumbing
and Fitting Industry of the
United States and Canada**

**Attorneys for Plaintiff Trustees
of the Plumbers Local Union
No. 1 Welfare Fund, Trade
Education Fund, 401(k)
Savings Plan, United
Association National Pension
Fund, and International
Training Fund**