

May 28, 2025

<u>**Via ECF**</u>
Hon. Ramo E. Reyes, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Konopka, et al. v. Pace Plumbing Corp. et al.*
                 No. 1:25 Civ. 811 (RER)(CLP)

Dear Judge Reyes:

      This office represents Plaintiffs in the above-captioned matter. We write to provide the Court with Plaintiffs position on Defendant Aterian Investment Management L.P.'s request for a pre-motion conference (ECF No. 29) and respectfully request that Aterian's request be denied.

### Case Overview

      This case arises from Defendants' abrupt termination of over 300 employees on February 6, 2025, without the advance notice required by federal and state WARN Acts. ECF No. 8 (Am. Compl.) ¶¶ 1-2. On that date, the Pace companies completely shut down their operations at 41 Box Street in Brooklyn, laying off their entire workforce. *Id.* ¶¶ 136, 160-162, 173-174, 185-187. The sudden closure left the terminated employees, union and non-union alike, without wages and benefits. *Id*. ¶¶ 3-4. Defendants acknowledged that the notice was not in compliance with the federal and state WARN Acts but blamed the unnoticed terminations on unforeseen circumstances and lack of funding. *Id*. ¶¶ 29, 43, 145; ECF Nos. 8-1 (Ex. A), 8-2 (Ex. B).

      As the private equity firm that invested in and controlled these companies through Defendant Eaglestone LLC, Aterian exercised direct control over employment decisions through its partner Michael Fieldstone, who worked with consultants to manage day-to-day operations, determine which employees to pay, and ultimately influenced the decision to terminate the workforce without proper notice. ECF No. 8 (Am. Compl.) ¶¶ 155-156, 165-166. This level of operational control and integration between Aterian and the operating companies, as alleged in the operative Complaint, adequately pleads "single employer" liability against Aterian.

### Aterian's Pre-Motion Conference Request Should Be Denied

      Courts balance the following five factors to determine whether an affiliated entity is in a single employer relationship under the WARN Acts: (i) common ownership; (ii) common directors/officers; (iii) de facto exercise of control; (iv) unity of personnel policies emanating from a common source; and (v) dependency of operations. *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 226 (2d Cir. 2013). At this phase, "the Court does not weigh the strength of the evidence, but rather assesses only whether the [complaint] alleges facts which, if true, would permit a

reasonable factfinder to find [the putative employer] liable under the WARN Act." *Garner v. Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 376 (S.D.N.Y. 2017).

The Complaint alleges facts that support the first two factors. Plaintiffs allege that Aterian publicly stated it was "excited to partner with" Pace and touted its "solutions-oriented approach" in the partnership. ECF No. 8 (Am. Compl.) ¶ 128. As part of this partnership, Alterian "had an ownership interest in [Defendant] Eaglesonte, LLC. *Id.* ¶ 98; *see also id.* ¶¶ 103-105 (describing Aterian's investment in Defendants), 128 (same). The Complaint further sets forth how Fieldstone was part of the other defendants' reporting structure and operations. *Id.* ¶¶ 106, 155-159, 161-164.

As to the third factor, *de facto* control, the Complaint contains specific allegations showing Aterian's exercise of control over employment decisions. Fieldstone was directly "involved in and influenced the decision to terminate the Class Members' employment." *Id.* ¶ 166. Fieldstone was deeply involved in day-to-day operations, as he "was involved in the day-to-day and financial decisions" and consulted weekly "to decide what and who to pay." *Id.* ¶¶ 155-156. He controlled decisions about work performed by employees and required regular operational reporting. *Id.* ¶¶ 157-159. Significantly, the CEO of Defendant Eaglestone, LLC reported directly to Fieldstone and advised employees that various decisions were "out of his control" as they were determined by "corporate" – referring to Fieldstone and others. *Id.* ¶¶ 162-163. These allegations demonstrate Fieldstone's substantial control over both routine operations and major employment decisions, including the ultimate decision to terminate the workforce without proper notice.

Plaintiffs' allegations also satisfy the personnel-policy factor because Alterian's involvement in the "decision to effect a mass layoff is the single most important personnel policy." *Garner*, 260 F. Supp. at 377 (cleaned up). As noted above, as was the case in Garner, Alterian was involved in the day-to-day operations of the other defendants and the decision to terminate the Plaintiffs and putative Class. Additionally, the Complaint sets forth allegations that Eaglestone, controlled by Aterian, promulgated uniform workplace rules and policies across the entities. *Id.* ¶¶ 119, 121, 123.

That the Complaint is light on facts speaking to the fifth factor, dependency of operations, is not dispositive. *See Garner*, 260 F. Supp. at 379-80 ("The absence of allegations as to dependency of operations does not alone prevent a finding of liability[.]"). Although the allegation that Fieldstone called upon and controlled Defendants' staff, there are, admittedly, no allegations in the Complaint about comingling of funds and the like. *See* ECF No. 8 (Am. Compl.) ¶ 159.

Moreover, contrary to Aterian's assertion, the Complaint provides a strong factual foundation for allegations made "upon information and belief" regarding Aterian's control through the following concrete details. The Complaint establishes Aterian's formal relationship and authority through its ownership interest in Eaglestone LLC and public statements about its "partnership" with and operational involvement in Pace. *Id.* ¶¶ 98, 103-105, 128. The Complaint also details specific interactions showing how this control was exercised – Fieldstone regularly participated in weekly meetings to make financial and operational decisions, including "what and who to pay." *Id.* ¶¶ 155-156. It also describes how Fieldstone required regular operational

Hon. Ramo E. Reyes, U.S.D.J.
Re**:** *Konopka, et al. v. Pace Plumbing Corp. et al.*
May 27, 2025
Page 3 of 3

reporting and controlled decisions about work performed. *Id.* ¶¶ 157-159. Most tellingly, both the CEO and CFO explicitly told employees that key decisions were "out of [their] control" because they were determined by Aterian. *Id.* ¶¶ 162-164. These concrete examples of Aterian's day-to-day involvement provide a solid factual basis for alleging "upon information and belief" that Fieldstone was ultimately "involved in and influenced the decision to terminate" the employees. *Id.* ¶ 166.

## Conclusion

Given these substantial allegations supporting each relevant factor, dismissal would be premature and the initial conference should be scheduled. If a pre-motion conference is held or briefing on the proposed motion is permitted, Plaintiffs respectfully request leave to address Aterian's argument that an amendment would be futile. Although this is Plaintiffs' second complaint, it is the first to address Aterian's liability and, as discussed above, the detailed allegations Plaintiffs have presented show not only a good faith basis for Aterian's liability, but that Aterian's status as single employer is plausible.

Thank you for the Court's time and attention to this matter.
.

                                              Respectfully submitted,

                                              Garrett Kaske

cc: Counsel of Record