**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAL KONOPKA and DRAGAN BOSOTINA, and on behalf of themselves and all others similarly situated, PLUMBERS UNION LOCAL NO. 1 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND FITTING INDUSTRY OF THE UNITED STATES AND CANADA, TRUSTEES OF THE PLUMBERS LOCAL UNION NO. 1 WELFARE FUND, TRADE EDUCATION FUND, and 401(k) SAVINGS PLAN, TRUSTEES OF THE UNITED ASSOCIATION NATIONAL PENSION FUND, and TRUSTEES OF THE INTERNATIONAL TRAINING FUND, | 1:25-cv-00811-RER-CLP<br><br>Date of service May 20, 2025 |

                            Plaintiff,

        - against -

PACE PLUMBING CORP., PACE PLUMBING DELAWARE CORP., THE PACE COMPANIES NEW YORK, LLC, PACE FIELD SERVICES, LLC d/b/a PACE MECHANICAL, and EAGLESTONE, LLC d/b/a EAGLESTONE NY, LLC, and ATERIAN INVESTMENT MANAGEMENT, LP d/b/a ATERIAN INVESTMENT PARTNERS,

                            Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT ATERIAN'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I. FACTS ................................................................................................................................... 1

II. APPLICABLE LEGAL STANDARDS ................................................................................. 4

    A. Standard for Motion to Dismiss for Failure to State a Claim ............................................ 4

    B. Standard for Single-Employer Liability under the WARN Act .......................................... 5

III. ARGUMENT ......................................................................................................................... 6

    A. The Complaint Does Not Plausibly Allege *Any* of the Factors for a Single-Employer Claim against Aterian ......................................................................................... 6

        1. The Complaint Does Not Allege Common Ownership by Aterian .............................. 6

        2. The Complaint Does Not Allege Aterian Had Common Directors and/or Officers with the Other Defendants ............................................................................... 7

        3. The Complaint's Allegations of De Facto Exercise of Control by Aterian Are Transparently Conclusory ............................................................................................. 9

        4. The Allegations of Unity of Personnel Policies Emanating from a Common Source Are Equally Conclusory as to Aterian ............................................................ 12

        5. The Complaint Does Not Allege Dependency of Operations by Aterian ................... 13

    B. The Claims against Aterian Are Uncurable, and Should Be Dismissed with Prejudice ___ .................................................................................................................... 14

IV. CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)..................................................4, 5, 10

*Atl. Recording Corp. v. Brennan*,
  534 F. Supp. 2d 278 (D. Conn. 2008).......................................................................................12

*Austen v. Catterton Partners V, LP*,
  709 F. Supp. 2d 168 (D. Conn. 2010).........................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).......................................................4, 12

*Chain v. N. E. Freightways, Inc.*,
  No. 16 CIV. 3371 (JCM), 2020 WL 7481142 (S.D.N.Y. Dec. 18, 2020) ....................6, 11, 12

*Citizens United v. Schneiderman*,
  882 F.3d 374 (2d Cir. 2018)......................................................................................................11

*Garner v. Behrman Bros. IV, LLC*,
  260 F. Supp. 3d 369 (S.D.N.Y. 2017)................................................................................6, 9, 12

*Guippone v. BH S & B Holdings LLC*,
  737 F.3d 221 (2d Cir. 2013).................................................................................................5, 11

*Guippone v. BH S & B Holdings LLC*,
  No. 09 CIV.1029 (CM), 2010 WL 2077189 (S.D.N.Y. May 18, 2010)................................7, 8

*In re Transcare Corp.*,
  614 B.R. 187 (Bankr. S.D.N.Y. 2020)............................................................................9, 12, 13

*MacNaughton v. Young Living Essential Oils, LC*,
  67 F.4th 89 (2d Cir. 2023) ..........................................................................................................4

*Pennington v. Fluor Corp.*,
  19 F.4th 589 (4th Cir. 2021) .......................................................................................................6

*Sharikov v. Philips Med. Sys. MR, Inc.*,
  103 F.4th 159 (2d Cir. 2024) .......................................................................................................5

*United States ex rel. Ladas v. Exelis, Inc.*,
  824 F.3d 16 (2d Cir. 2016).........................................................................................................15

*Vogt v. Greenmarine Holding, LLC*,
    318 F. Supp. 2d 136 (S.D.N.Y. 2004)....................................................................................6, 8

**Statutes**

Workers Adjustment and Retraining Act, 29 USC § 2101 *et seq.*.......................................... passim

New York Workers Adjustment and Retraining Act..............................................................1, 2, 4

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................4

**Other Authorities**

20 C.F.R. § 639(a)....................................................................................................................2, 14

The plaintiffs' claim that defendant Aterian Investment Partners L.P. ("Aterian") constituted part of a supposed "single employer" for purposes of the plaintiffs' WARN Act claims fails based on a deep and settled body of law holding that an investor in an operating business is <u>not</u> an employer of the business's workforce for purposes of the WARN Act, even if the investor exercises regular and close oversight and financial management of the business. Rather, the investor must exhibit a highly unusual level of control over the business. Such control cannot be established by facts showing that the investor was involved in the day-to-day operation of the business, but by facts showing that the investor specifically directed the layoffs in question in the WARN claim and caused the operating business not to give WARN-compliant notice of the layoffs. None of the factors that the law requires for a finding of control – from common ownership with the operating business to unitary personnel policies – is well-pleaded here. Indeed, the complaint does not attempt to conceal that its claim that Aterian was "involved in and influenced the decision to terminate the Class Members['] employment and disregard the obligations of the WARN Acts" is conclusory, and made on information and belief without reference to any alleged supporting facts.

Because plaintiffs' sole claim against Aterian fails altogether to state a claim upon which relief can be granted, and because it does so even after the plaintiffs have amended their complaint specifically to try to articulate an adequate single-employer theory as to Aterian, the action against Aterian should be dismissed with prejudice.

## I.    FACTS

This action purports to state claims under the federal Workers Adjustment and Retraining Act of 1988 (the "WARN Act," 29 USC § 2101 *et seq.*) and the New York Workers Adjustment and Retraining Act (the "NY Mini-WARN Act") arising out of the February 6, 2025 shutdown of businesses in Brooklyn, New York going under variations of the name "Pace Plumbing" and that

1

allegedly performed construction work in the tri-state area.  The complaint alleges that plaintiff Michael Konopka worked as a plumber for "the Defendants" and that plaintiff Dragan Bosotina worked as Director of Billing and Accounts Receivable for defendant The Pace Companies New York, LLC. First Amended Complaint ("Cmplt.," doc. 8), ¶¶ 13, 19, 20.  The remaining plaintiffs are a plumbers union that the complaint alleges represented plumbers employed by "the Defendants," and the trustees of certain benefit funds associated with the union that allegedly collected and oversaw fund contributions made by "the Defendants" as part of compensation for the work of the union's members.  *Id.*, ¶¶ 25, 30-33. The gravamen of the complaint is that the businesses in which the individual plaintiffs and the union's members worked were allegedly shut down, and the employees laid off, without the periods of advance notice required by the WARN Act and the NY Mini-WARN Act. *Id.*, ¶2.  The named plaintiffs purport to have brought this action on behalf of two putative classes of others similarly situated, consisting of union and non-union employees respectively. *Id.*, ¶¶ 3-5.  No class certification motion has yet been put to the court.

The narrow issue presented by this motion to dismiss is the inadequacy of the plaintiffs' allegations about *who employed them*.  The complaint alleges that on February 6, 2025, a group of 310 workers were all laid off from a supposed "single site of employment" at 41 Box Street in Brooklyn, New York, by the following specifically-enumerated employers:

- "The Pace Companies New York, Inc.: 39 affected workers."

- "Pace Field Services, LLC: 57 affected workers."

- "Pace Plumbing Corporation: 214 affected workers."

*Id.*, ¶¶ 64, 136.  The plaintiffs have sued a number of other defendants, however, alleging that "Defendants, separately and jointly, were 'employers,' as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a), and continued to operate as a business until they decided to order mass layoffs or plant closings described in this Complaint." *Id.*, ¶ 134. The complaint seeks to hold

2

all of the defendants, including the movant Aterian, liable on the basis of their supposed co-identity, in what is referred to in WARN Act jurisprudence as a "single-employer" claim.

The other defendants include several more "Pace"-named entities, some of which the complaint refers to as "the Pace Defendants" and others of which are referred to separately.[1] The complaint alleges that the "Pace Defendants had centralized operations," and that they "shared office space" and "shared employees." *Id.*, ¶¶ 115, 120-22. It alleges that the defendant Eaglestone, LLC ("Eaglestone") was a parent company of the "Pace"-named entities, *id.*, ¶ 114, and alleges that "the Pace Defendants" and Eaglestone shared other features or conduct, such as that they had "a centralized IT department" and a "uniform set of workplace rules, memorialized in a single handbook." *Id.*, ¶¶ 123, 125.

The complaint describes Aterian as "an operationally-focused middle market private equity firm focused on investing in businesses that are financially or operationally challenged," and alleges that Aterian "was Eaglestone, LLC's parent company." *Id.*, ¶¶ 97, 101. The complaint does not allege that Aterian itself directly operated any plumbing or construction business or directly employs anyone. It also acknowledges that Aterian is separately organized, with its own legal personality and a distinct location from the other defendants. *Id.*, ¶¶ 96, 99-100.

The complaint alleges that beginning in 2024, non-party Michael Fieldstone, whom it describes as a co-founder of and partner in Aterian, and consultants from a firm known as Portage

---

[1] Confusingly, The Pace Companies New York, Inc. is <u>not</u> named as a defendant in the action, even though the complaint alleges that this entity was among those to lay off the workers in question. *See* Summons, doc. 14; Cmplt., ¶ 136. The complaint alleges that The Pace Companies New York, Inc. became inactive and was merged out of existence in 2019. Cmplt., ¶ 68. While the complaint alleges that The Pace Companies New York, Inc. was succeeded by an entity called The Pace Companies, LLC, *id.*, The Pace Companies, LLC is also not named as a defendant in the action. Instead, the summons includes an entity called The Pace Companies New York, LLC, which is referenced in the entity chart attached to the complaint as Exhibit C, and is included among the entities that the complaint refers to by the defined term the "Pace Defendants." *See* Cmplt., unnumbered introductory paragraph. These discrepancies are beside the point of the motion to dismiss, and are largely not addressed in this memorandum. Aterian reserves the right to brief them if and when they become material, however.

Point Partners, whom the complaint alleges were retained at the behest of BMO Bank, a lender to the "the Pace Defendants" and Eaglestone, began to closely consult on and seek information about developments in the Pace businesses. *Id.*, ¶¶ 146, 154-64. It alleges, "on information and belief", that Mr. Fieldstone and the consultants "were involved in the decisions to sell off various parts of Defendants' business" and "were involved in and influenced the decision to terminate the Class Members['] employment and disregard the obligations of the WARN Acts." *Id.*, ¶¶ 165-66.

The complaint contains two separate counts, both of which are pled against all defendants. The first count purports to state a claim under the federal WARN Act, and the second under the NY Mini-WARN Act. The two counts are functionally identical but for the length of the required notice that the plaintiffs allege that the defendants failed to provide (60 days under federal law and 90 days under state law), and the differing employee headcount threshold alleged to make the statutes applicable. Under both counts, the plaintiffs seek money damages, attorney's fees, and costs.

## II. APPLICABLE LEGAL STANDARDS

### A. Standard for Motion to Dismiss for Failure to State a Claim

"A complaint survives a Rule 12(b)(6) motion to dismiss if the facts, taken as true and with all reasonable inferences drawn in the plaintiff's favor, state a plausible claim to relief. *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023). While [a court is] required to assume the truth of the 'well-pleaded factual allegations' in the complaint, that obligation is 'inapplicable to legal conclusions,' such as '[t]hreadbare recitals of the elements of a cause of action' that are 'supported by mere conclusory statements.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (distinguishing between a 'showing of' an 'entitlement to relief,' as required by Federal Rule of Civil Procedure

4

8(a)(2), and a mere 'blanket assertion' of the same). Legal conclusions, standing alone, 'are not

entitled to the assumption of truth' unless 'supported by factual allegations' that 'plausibly give

rise to an entitlement to relief' -- a 'context-specific' determination grounded in 'judicial

experience and common sense.' *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937." *Sharikov v. Philips Med.*

*Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024).

    **B.**    <u>Standard for Single-Employer Liability under the WARN Act</u>

    The Second Circuit has "adopted the five non-exclusive factors set forth in the Department

of Labor ["DOL"] … regulations to determine if related entities are single employers … as the test

to be applied in this Circuit in determining whether WARN liability can be imposed on a parent

company. This regulation provides that:

> independent contractors and subsidiaries which are wholly or partially owned by a
> parent company are treated as separate employers or as part of the parent or
> contracting company depending upon the degree of independence from the parent.
> Some of the factors to be considered in making this determination are (i) common
> ownership, (ii) common directors and/or officers, (iii) de facto exercise of control,
> (iv) unity of personnel policies emanating from a common source, and (v) the
> dependency of operations.

These factors are useful for courts in determining whether the nominally separate corporations

actually functioned as a single entity with respect to policy.  In a WARN case …, that policy is the

decision to terminate the employment of a significant part of a company's work force. These

factors are also sensibly applied to determine whether WARN liability is to be imposed on an

equity investor, who may similarly exercise control over the termination decision … As in any

balancing test, application of these factors requires a fact-specific inquiry, no one factor set out by

the DOL is controlling, and all factors need not be present for liability to attach." *Guippone v. BH*

*S & B Holdings LLC*, 737 F.3d 221, 226 (2d Cir. 2013) (internal punctuation and citations omitted).

    This is "a narrow test" that applies only in  "the unusual case where a company commits a

wrongful act through the legal form of a distinct entity … As the Supreme Court has put it, 'it is a

general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation is not liable for the acts of its subsidiaries.'" *Pennington v. Fluor Corp.*, 19 F.4th 589, 598 (4th Cir. 2021) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (internal punctuation omitted)).

## III.    ARGUMENT

### A.    The Complaint Does Not Plausibly Allege *Any* of the Factors for a Single-Employer Claim against Aterian

The plaintiffs' complaint fails to adequately plead <u>any</u> of the five factors for single-employer liability as to Aterian.  It contains no allegations – well-pleaded or not – even attempting to address three of the five factors as applied to Aterian.  And the complaint's allegations as to the remaining two factors are undisguisedly conclusory and speculative.

#### 1.    *The Complaint Does Not Allege Common Ownership by Aterian*

The common ownership factor of the single-employer test "inquires whether a parent or related entity <u>directly</u> owns a separate corporate entity." *Garner v. Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 376–77 (S.D.N.Y. 2017) (emphasis added).  "Ownership must be direct and cannot be held through other investment companies." *Chain v. N. E. Freightways, Inc.*, No. 16 CIV. 3371 (JCM), 2020 WL 7481142, at \*11 (S.D.N.Y. Dec. 18, 2020), *report and recommendation adopted*, No. 16 CV 3371 (VB), 2021 WL 5051656 (S.D.N.Y. Nov. 1, 2021). *See Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 142 (S.D.N.Y. 2004) (finding common ownership only for the three "investment vehicles" that actually owned stock in the allegedly culpable entity, but not for the other parties that were "at best grandparents" of the entity).  Here, the complaint alleges that <u>Eaglestone</u> "is the parent company of" the entities that allegedly employed and laid off the

6

employees in question: Pace Field Services, LLC and Pace Plumbing Corporation.[2] Cmplt., ¶ 114. The complaint alleges that Aterian is in turn the parent of Eaglestone, not itself a direct parent of the employer entities. *Id.*, ¶¶ 97-98. Because the complaint does not allege that Aterian directly owned Pace Field Services, LLC and Pace Plumbing Corporation, the complaint is *per se* insufficient to satisfy the common ownership factor as to Aterian.[3]

> ### 2.    The Complaint Does Not Allege Aterian Had Common Directors and/or Officers with the Other Defendants

This factor "ordinarily looks to whether the two nominally separate corporations: (1) actually have the same people occupying officer or director positions with both companies; (2) repeatedly transfer management-level personnel between the companies; or (3) have officers and directors of one company occupying some sort of formal management position with respect to the second company." *Guippone v. BH S & B Holdings LLC*, No. 09 CIV.1029 (CM), 2010 WL 2077189, at *5 (S.D.N.Y. May 18, 2010) (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 497 (3rd Cir. 2001)).

Here, the only allegation in the complaint that any of the defendants shared any officers or directors is the allegation in paragraph 126 that Jason Richards acted "as an 'Officer' of the Pace Defendants and Ea[g]lestone" in a specific instance in which he allegedly executed an assignment for the benefit of creditors on behalf of those entities.  The complaint contains no allegation

---

[2] Here again, the complaint fails to tie this allegation to the other entity that it alleges employed and laid off some of the putative class members, The Pace Companies New York, Inc. *See* footnote 1, page 3.

[3] The complaint is equally insufficient to satisfy the common ownership factor against Eaglestone. Exhibit C to the complaint, which forms part of the pleading for purposes of a motion to dismiss for failure to state a claim, is an entity chart that the plaintiffs allege depicts, among other things, the corporate affiliations between Eaglestone and the "Pace"-named entities. Cmplt., ¶ 114. The chart shows three layers of intervening ownership between Eaglestone, LLC and The Pace Companies New York, LLC, including Eaglestone Holdings, LLC, Eaglestone Intermediate Holdings, LLC, and Pace Intermediate, LLC. The remaining "Pace"-named defendants (including Pace Field Services, LLC and Pace Plumbing Corporation), the operating businesses that the complaint says were the named employers of the workers in question, sit a further tier below The Pace Companies New York, LLC. Altogether, the complaint alleges that there are <u>five</u> layers of intermediate ownership between Aterian and the "Pace" operating companies.

whatsoever that he or any other person served as an officer or director of <u>Aterian</u> in addition to serving as an officer or director of another defendant entity.  Because it does not, the plaintiffs cannot meet the pleading burden on this factor with regard to a single-employer claim against Aterian. *Vogt*, 318 F. Supp. 2d at 142  ("None of the other defendant companies are alleged to have shared directors or officers with OMC, so those defendants do not meet this element of the DOL test.").

The thinness of the allegation would make it inadequate even when considered in a wider single-employer analysis.  Courts analyzing this factor have looked not to the existence of a single shared officer or director acting in an ordinary oversight or ministerial capacity, but to whether the overlap of officers and directors is *numerous and pervasive* and the degree and character of the common directors' and officers' involvement is beyond the ordinary.  "As the Supreme Court has noted, it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary. Since courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary, it cannot be enough to establish liability that dual officers and directors made policy decisions and supervised activities at the subsidiary. *Vogt*, 318 F. Supp. 2d at 142 (citing *Bestfoods*, 524 U.S. at 69–70, 118 S. Ct. at 1888) (internal punctuation omitted)); *Id.* ("<u>all</u> of OMC's <u>five</u> Board members were on the Greeenmarine management committee <u>that appointed the OMC Board</u>, and two of them, … were also on the board of Greenlake II") (emphasis added); *Guippone*, 2010 WL 2077189, at *5 ("<u>Four of the seven members</u> of HoldCo's Board of Managers are alleged to have been representatives of specific investor-defendants. … Further, HoldCo is alleged to have been the sole managing member of Steve and Barry's. Thus, there were clear areas of overlap between the various defendants, their officers, directors and representatives.") (emphasis added); *Garner*, 260 F. Supp. 3d at 377 (the

complaint "alleges that Behrman and Atherotech had <u>multiple</u> common directors and/or officers") (emphasis added); *Austen v. Catterton Partners V, LP*, 709 F. Supp. 2d 168, 175 (D. Conn. 2010) ("Plaintiffs have alleged that the boards of directors of the Archway Entities were composed <u>entirely</u> of individuals from Insight and Catterton. … The Complaint also lists <u>seven</u> individuals who were in management, director, or officer positions with Insight or Catterton and the Archway Entities") (emphasis added).

The plaintiffs' complaint cannot begin to satisfy this analysis both because it does not plead any specifics actions that would show the degree or character of Mr. Richards's involvement with the entities in question beyond executing the assignment, and because it identifies no broader set of allegedly common officers and directors beyond Mr. Richards. Indeed, the complaint affirmatively alleges that Eaglestone and the "Pace Defendants" had <u>different</u> officers: Mr. Richards in the former case and Derrick Flanagan in the latter case. Cmplt., ¶¶ 163-64.

### 3. *The Complaint's Allegations of De Facto Exercise of Control by Aterian Are Transparently Conclusory*

"While no one factor controls, the factors are accorded different weights and de facto control is the 'key' factor. The core of this factor is whether one company was the decision-maker responsible for the employment practice giving rise to the litigation. Where the de facto exercise of control is particularly striking – for instance, were it effectuated by disregarding the separate legal personality of its subsidiary – then liability might be warranted even in the absence of the other factors. Nevertheless, <u>the factor is not intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership</u>." *In re Transcare Corp.*, 614 B.R. 187, 204 (Bankr. S.D.N.Y. 2020) (emphasis added).

The allegations in paragraphs 155 to 166 are the complaint's attempts at alleging de facto control by Aterian. While they are pleaded in separate paragraphs with minor variations in an

apparent attempt to give them substance through sheer repetition, they all amount to essentially the same allegation: that Mr. Fieldstone stayed apprised of and consulted on developments with the Pace Defendants and Eaglestone in the time leading up to the worksite closure.[4]  The complaint alleges, for example, that Mr. Fieldstone requested "data and information related to the operations of Eaglestone, LLC and the Pace Defendants," and that others "copied [him] on various operations emails." Cmplt., ¶¶ 159 & 161.  Even assuming these allegations are true, however, far from showing a "striking" or unusual exercise of control by Aterian, they reflect exactly what an observer would expect from a concerned investor at a time in which a business in which it was invested was not flourishing – close monitoring, as an ordinary incident of ownership.  Such monitoring does not give a court observing from a position of "judicial experience and common sense" any reason to think that the case presents the sort of unusual circumstances required to give rise to direct liability by the investor. *Iqbal*, 556 U.S. at 679.

Even where the complaint alleges that Mr. Fieldstone took part in decisions about the Pace companies or Eaglestone, it provides no meaningful factual allegations – just categorical and conclusory assertions that he was involved in "day-to-day" or "financial" decisions, with no underlying alleged facts. *Id.*, ¶ 155. The complaint attempts to bolster these conclusory statements with still vaguer allegations about supposed statements by officers of Eaglestone and the "Pace Defendants" that "various decisions" about the companies were "out of [their] control" and were "determined by 'corporate.'" *Id.*, ¶¶ 163-64.  Not only are those decisions not specified, but any contention that "corporate" meant Mr. Fieldstone, or the consultants, is at best the plaintiffs' own

---

[4] These paragraphs also allege that the Portage Point consultants did the same alongside Mr. Fieldstone. The consultants' involvement, however, even if it were real and pleaded with any detail, could not support a single-employer claim against Aterian because the complaint does not specify who allegedly hired the consultants and for whom they were allegedly acting. It merely alleges, "on information and belief," that "the Defendants" hired Portage Partners, "in consultation with" the lender BMO. Cmplt., ¶ 154.

10

speculation, not a statement they allege was made by the officers or anyone else. Because of the lack of detail in these allegations, the court has no basis to find the allegations more than speculative. And even were they something more than speculative, allegations that an investor defendant "exercised financial control over" an employer defendant or was "involved in operational tasks leading up to the closure of" a worksite are not sufficient to satisfy the de facto control factor because they do "not support a finding that [an investor defendant] *specifically directed* the closure." *Chain*, 2020 WL 7481142, at *14 (emphasis in original).

Finally, wherever the complaint does tiptoe up to the question actually at issue in de facto control, it never crosses the line of alleging flatly that Aterian actually controlled the decisions whether to lay off the workers or give WARN Act notices. That is because plaintiffs cannot make such an allegation. Revealingly, the complaint falls back on the "information and belief" hedge, and it merely alleges that Mr. Fieldstone and the consultants "were involved in and influenced" the decisions. Cmplt., ¶ 165. Involvement or influence, however, is not sufficient to satisfy the pleading standard for this factor; the criterion is <u>control</u>. *Guippone*, 737 F.3d at 227 ("The factor is appropriately utilized, however, if the parent ... was <u>the</u> decision-maker responsible for the employment practice giving rise to the litigation … [This] prong allows the factfinder to consider whether the parent has specifically <u>directed</u> the allegedly illegal employment practice that forms the basis for the litigation.") (emphases added).

Not only is the failure to plead outright control by Aterian fatal on this factor, but the use of "information and belief" pleading makes the allegation particularly suspect. *See Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory."); *Atl. Recording Corp. v. Brennan*, 534 F. Supp. 2d 278, 283 (D. Conn. 2008) ("Plaintiffs'

allegations of infringement lack any factual grounding whatsoever, and rely instead on their 'information and belief' that [the defendant] willfully violated their exclusive rights. This is the type of 'speculative' pleading which is insufficient under *Twombly*, and Plaintiffs' complaint is therefore inadequate.") (internal punctuation and citations omitted)

### 4. The Allegations of Unity of Personnel Policies Emanating from a Common Source Are Equally Conclusory as to Aterian

"The 'unity of personnel policies' factor is analogous to the aspect in the federal labor law test concerning 'centralized control of labor operations,' which the Second Circuit has considered to include factors such as centralized hiring and firing, payment of wages, maintenance of personnel records, benefits and participation in collective bargaining." *In re Transcare*, 614 B.R. at 206. "This factor focuses specifically on 'day-to-day employment policies.'" *Chain*, 2020 WL 7481142, at *12. While "[i]n the context of the WARN Act, the decision to effect a mass layoff is the single most important personnel policy," since *Twombley*, "courts have … declined to find that the unity of personnel policies factor favors liability where a complaint's allegations as to the defendants' involvement in the termination decision forming the crux of the WARN Act claim were no more than conclusory." *Garner*, 260 F. Supp. 3d at 377-78.

Here, even assuming, *arguendo*, that the complaint adequately pleads unitary day-to-day personnel policies among the so-called "Pace Defendants," which Aterian does not concede, there can be no dispute that none of those allegations are directed to Aterian. Aterian simply is not mentioned in those allegations, nor does the complaint even allege that Aterian itself had any employees as to whom personnel policies could be applied. *E.g.*, Cmplt., ¶ 119 ("The employees of The Pace Companies New York, LLC and Eaglestone, LLC handled human resources matters for Pace Defendants"); *id.*, ¶ 124 ("The Pace Defendants and Eaglestone, LLC employees were required to return any Discrimination and Harassment Complaint Forms to the Chief Human

12

Resources Officer of Eaglestone, LLC."); *id.*, ¶ 125 ("Eaglestone, LLC promulgated a uniform set of workplace rules, memorialized in a single handbook, <u>for the Pace Defendants and Eaglestone, LLC.</u>") (emphases added).

The only allegation in the complaint related to this factor that is in any way directed to Aterian is the same reductive and carefully hedged allegation that is insufficient to support the de facto control factor: that Mr. Fieldstone was "involved in and influenced the decision to terminate the Class Members['] employment and disregard the obligations of the WARN Acts." Cmplt., ¶ 166. This allegation being "no more than conclusory," the plaintiffs have not adequately pleaded the unitary personnel policies factor.

5.    *The Complaint Does Not Allege Dependency of Operations by Aterian*

"The 'dependency of operations' factor addresses three areas of overlap between two entities: (1) sharing of administrative or purchasing services, (2) interchanges of employees or equipment, or (3) commingled finances." *In re Transcare*, 614 B.R. at 207 (citing *Garner*, 260 F. Supp. 3d at 379). The complaint is completely silent on these areas as to Aterian. As with the personnel policies factor, any allegations in the complaint directed to shared services, employees, equipment, or finances simply do not mention Aterian. *E.g.*, Cmplt., ¶ 120 ("<u>The Pace Defendants</u> shared office space.); *id.*, ¶ 123 ("…<u>the Pace Defendants and Eaglestone, LLC</u> had a centralized IT department") (emphases added). Without conceding that such allegations are sufficient to satisfy this factor as to the entities that are alleged to have participated in those shared arrangements, the allegations self-evidently cannot satisfy the dependance of operations factor as to Aterian, which is not even mentioned.

In short, the complaint does not make a single well-pleaded, non-conclusory allegation that could support any of the five factors of the single-employer test as applied to Aterian, and the complaint therefore entirely fails to state a claim against Aterian.

13

## B.    The Claims against Aterian Are Uncurable, and Should Be Dismissed with Prejudice

The failings in the plaintiffs' claims against Aterian are not curable. They do not come from inartful wording or an unrefined rough take at the facts, but from the unavoidable obstacle that Aterian is an investor with its own corporate personality distinct from the businesses that it invested in, and that it neither controlled the decision to lay off the plaintiffs nor had any of the required overlap of operations and personnel.

Indeed, these flawed allegations are already the product of an amended pleading. The plaintiffs' original complaint did not name Aterian. *See* doc 1, "Class Action Complaint." It did, however, plead a single-employer theory against the defendants named in that complaint, including Eaglestone. *Id.*, ¶ 49 ("At all times hereinafter mentioned, Defendants, separately and jointly, were 'employers,' as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a), and continued to operate as a business until they decided to order mass layoffs or plant closings described in this Complaint."). Which is to say, the plaintiffs knew, when they set out to implead Aterian in their First Amended Complaint, what they were about and what facts they needed to plead to make their single-employer claims legally sufficient as to Aterian. They sought specifically to refine the single-employer claims to reach Aterian, and they have had ample opportunity, on their second try, to plead the claims in as much detail as they could. Having taken their best shot, they have been unable to plead plausibly or adequately against Aterian, and another opportunity will not change that.

"Leave to amend … should generally be denied in instances of futility, … repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016). All three circumstances are present here. Not only are the flaws uncurable, but Aterian has already incurred

14

the trouble, expense, and uncertainty of having to respond to a manifestly inadequate pleading, and forcing it to do so again would only deepen that burden. Accordingly, the complaint against Aterian should be dismissed with prejudice.

## IV.    CONCLUSION

For all of the foregoing reasons, and all those reasons to be adduced in any oral argument on this motion, the complaint fails to state claims upon which relief can be granted against Aterian, and the purported claims against Aterian should be dismissed with prejudice.

Date:   New York, New York          **AKERMAN LLP**

May 20, 2025

By: /s/ *Adam S. Mocciolo*
Adam S. Mocciolo
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Tel.: 212.880.3800
adam.mocciolo@akerman.com

Dustin B. Hillsley (pro hac vice motion forthcoming)
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301
Tel.: 954.463.2700
dustin.hillsley@akerman.com

*Attorneys for Defendant Aterian Investment Management L.P.*

## CERTIFICATION

Pursuant to Local Civ. Rule 7.1(c), I certify that this memorandum contains 4,497 words, exclusive of the caption and cover page, tables of contents and authorities, the signature block, and certifications, as measured by Microsoft Word's word-counting function.

*/s/ Adam S. Mocciolo*
Adam S. Mocciolo

The foregoing was served on counsel of record by email to accompany the movant's letter requesting a pre-motion conference, or mailed to any counsel/parties unable to accept electronic notices.  This document will be electronically filed with the court in accordance with any schedule set by the court

*/s/ Adam S. Mocciolo*
Adam S. Mocciolo