UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

MICHAL KONOPKA and DRAGAN BOSOTINA, and on behalf of themselves and all others similarly situated, PLUMBERS UNION LOCAL NO. 1 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND FITTING INDUSTRY OF THE UNITED STATES AND CANADA,  TRUSTEES OF THE PLUMBERS LOCAL UNION NO. 1 WELFARE FUND, TRADE EDUCATION FUND, and 401(k) SAVINGS PLAN, TRUSTEES OF THE UNITED ASSOCIATION NATIONAL PENSION FUND, and TRUSTEES OF THE INTERNATIONAL TRAINING FUND,

No.: 25 Civ. 811 (RER)(CLP)

Plaintiffs,

- against -

PACE PLUMBING CORP., PACE PLUMBING DELAWARE CORP., THE PACE COMPANIES NEW YORK, LLC, PACE FIELD SERVICES, LLC d/b/a PACE MECHANICAL, and EAGLESTONE, LLC d/b/a EAGLESTONE NY, LLC, and ATERIAN INVESTMENT MANAGEMENT, LP d/b/a ATERIAN INVESTMENT PARTNERS,

Defendants.
------------------------------------------------------------------------ X

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

| | | |
|---|---|---|
| KESSLER MATURA, P.C.<br>Troy L. Kessler<br>Garrett Kaske<br>534 Broadhollow Rd, Ste 275<br>Melville, New York 11747<br><br>SUGAR LAW CENTER FOR ECONOMIC & SOCIAL JUSTICE<br>John C. Philo*<br>Anthony D. Paris*<br>4605 Cass Ave., 2nd Floor<br>Detroit, Michigan 48201<br>*phv application forthcoming<br><br>*Attorneys for Plaintiffs Konopka, Bosotina and the Putative Class* | PITTA LLP<br>Jane Lauer Barker<br>120 Broadway, 28th Floor<br>New York, NY  10271<br><br>*Attorneys for Plaintiff Plumbers Union Local No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Fitting Industry of the United States and Canada* | O'DONOGHUE & O'DONOGHUE LLP<br>Diana Cohn<br>5301 Wisconsin Ave. N.W. Ste. 800<br>Washington, D.C. 20015<br><br>*Attorneys for Plaintiff Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, 401(k) Savings Plan, United Association National Pension Fund, and International Training Fund* |

**Served on Defendant Aterian Investment Management, LP via email on August 29, 2025**

**TABLE OF CONTENTS**

Introduction ..................................................................................................................................1

Facts ..............................................................................................................................................2

I.      Over 300 Employees Lost Their Jobs Without Notice ........................................................2

II.     Defendants Experienced Financial Difficulties Before the Mass Termination ...................2

III.    Aterian Exercised Control Over the Other Defendants, Including with Relation to the Termination of the Putative Class Members........................................................................3

Argument .....................................................................................................................................4

I.      Standard of Review..............................................................................................................4

II.     The Allegations in the Complaint Satisfy Article III's Standing Requirements. ................4

        A.    Factor 1:  The Complaint Alleges Common Ownership as Aterian is Alleged to have an Ownership Interest in Eaglestone, LLC, which, in turn, Owned the Subsidiary Defendants. .......................................................................................5

        B.    Factor 2:  That Plaintiffs Did Not Allege that Aterian and the Remaining Defendants Shared Officers and Directors Is Not Dispositive ...............................6

        C.    Factor 3:  Plaintiffs Allege Specific Instances and Forms of Aterian's De Facto Control .................................................................................................................7

        D.    Factor 4: The Complaint Alleges that Aterian Controlled Personnel Policies ........8

        E.    Factor 5:  Aterian's Investment in Eaglestone, LLC and Involvement in the Day-to-Day Operations of the other Defendants Weighs in Plaintiffs' Favor.................9

III.    The Allegations Go Beyond Mere Labels, Conclusions, and Elemental Resuscitations...10

IV.   Dismissal With Prejudice Would Be Premature................................................................10

Conclusion .................................................................................................................................11

## TABLE OF AUTHORITIES

**P**AGE(S)

**C**ASES

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) .................................................................................. 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 4

*Austen v. Catterton Partners V, LP*,
  709 F. Supp. 2d 168 (D. Conn. 2010) ............................................................... 6, 7, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 4

*Chain v. N. E. Freightways, Inc.*, No.,
  2020 WL 7481142 (S.D.N.Y. Dec. 18, 2020) ................................................... 5, 7, 9

*Drip Cap., Inc. v. JY Imports of NY Inc.*,
  348 F.R.D. 536 (E.D.N.Y. 2025) ............................................................................. 4

*Fleming v. Bayou Steel Bd. Holdings II L.L.C.*,
  83 F.4th 278 (5th Cir. 2023) .................................................................................... 5

*Garner v. Behrman Bros. IV, LLC*,
  260 F. Supp. 3d 369 (S.D.N.Y. 2017) ........................................................... 5, 6, 8, 9

*Guippone v. BH S & B Holdings LLC*,
  737 F.3d 221 (2d Cir. 2013) ............................................................................ 4, 5, 7

*Guippone v. BH S & B Holdings LLC*,
  2010 WL 2077189 (S.D.N.Y. May 18, 2010) ......................................................... 9

*Hampton v. Navigation Cap. Partners, Inc.*,
  64 F. Supp. 3d 622 (D. Del. 2014) .......................................................................... 5

*La Rosa v. Abbott Lab'ys*,
  2024 WL 2022297 (E.D.N.Y. May 7, 2024) ......................................................... 11

*Local 217, Hotel & Rest. Empls. Union v. MHM, Inc.*,
  976 F.2d 805 (2d Cir.1992) ..................................................................................... 6

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
  709 F.3d 129 (2d Cir. 2013) .................................................................................. 10

*Person v. Component Tech. Corp.*,
   247 F.3d 471 (3d Cir. 2001) .................................................................................................. 7

*Posada v. E. Coast Cap.*,
   2025 WL 917829 (E.D.N.Y. Mar. 26, 2025)........................................................................ 10

*United States ex rel. Ladas v. Exelis, Inc.*,
   824 F.3d 16 (2d Cir. 2016) .................................................................................................. 11

*Vogt v. Greenmarine Holding, LLC*,
   318 F. Supp. 2d 136 (S.D.N.Y. 2004) ...................................................................... 6, 7, 8, 9

**REGULATIONS**

20 C.F.R. § 639.3(a)(2) ............................................................................................................... 4

## INTRODUCTION

Plaintiffs are Defendants' former employees, joined by the workers' union and related funds, alleging violations of the federal and New York State Worker Adjustment and Retraining Notification Acts ("WARN Acts"). On February 6, 2025, Defendants abruptly terminated over 300 employees without providing the required advance written notice (the "Class" or "Class Members"), when Defendants suddenly closed their doors.

Defendant Aterian Investment Management, LP ("Aterian") moves for partial dismissal, arguing it cannot be held liable as an employer under the WARN Acts. Federal and state law, however, holds that private equity parent companies are liable under the WARN Act when acting functioning as a single entity in deciding to terminate employees.

The Complaint contains detailed factual allegations demonstrating that Aterian, an operationally-focused private equity firm, exercised substantial control over the employment decisions of the other Defendants, including the decision to terminate the entire workforce. Rather than being a passive investor, Aterian actively participated in day-to-day operations through its representative Michael Fieldstone and consultants from Portage Point Partners.

Courts apply a five-factor test to determine whether affiliated entities constitute a "single employer" under the WARN Acts, with particular emphasis on the control factor. The Complaint plausibly alleges that Aterian exercised such control, including the decision to terminate the putative Class Members' jobs. Specifically, Aterian was involved in the day-to-day and financial decisions of the Pace entities, consulted weekly on operational matters including who Defendants did and did not pay, and controlled the CEO and CFO of the other Defendants. As such, Aterian's motion to dismiss should therefore be denied.

**FACTS**

**I.  Over 300 Employees Lost Their Jobs Without Notice.**

On February 6, 2025, Defendants terminated all of the Pace Defendants' employees – exceeding 300 individuals, including Plaintiffs Konopka and Bosotina, without sufficient written notice as required by the WARN Acts. ECF No. 8 (Am. Compl.) ¶ 2. At the time, Defendants employed over 310 putative Class Members in Brooklyn. *Id*. ¶ 136. That day, Defendants closed the business operations of Eaglestone, LLC and the Pace Defendants. *Id*. ¶ 137.

Defendants advised the putative Class Members of their termination on a Zoom conference meeting. *Id*. ¶ 139. On the day of the termination, Defendants sent letters to the Class Members advising them of the termination, which was the "result of a plant closing" in which "all employees working for [the Pace Defendants] will be terminated permanently on the Shut Down Date [February 6, 2025] or within the 14-day period starting on that Shut Down Date." *Id*. ¶ 144.

**II.  Defendants Experienced Financial Difficulties Before the Mass Termination.**

Defendants sudden, mass termination of their employees was preceded by a lengthy period of financial difficulties. The Pace Defendants and Eaglestone, LLC experienced financial, operational, and industrial hurdles in 2024. *Id*. ¶ 148. They reported significant project losses. *Id*. ¶ 149. As a result, by no later than August 2024, Defendants began exploring selling parts of the business. Id. ¶ 151. They then sold several subsidiaries of Eaglestone, LLC, including: (a) Solar Energy Systems, LLC in December 2024; (b) 360 Fire Prevention LLC in December 2024; (c) entities related to P.J.M. Intermediate, LLC on or around January 24, 2025; and (d) entities related to CET Acquisition Holdings, LLC on or around February 5, 2025. *Id*. ¶ 152.

### III. Aterian Exercised Control Over the Other Defendants, Including with Relation to the Termination of the Putative Class Members.

Aterian is a middle market private equity firm focused on investing in businesses that are financially or operationally challenged. Id. ¶ 101. Michael Fieldstone is a Co-Founder and Partner of Aterian Investment Management, LP. Id. ¶ 106.

Aterian was the parent company of Eaglestone, LLC and the other Defendants. *See id*. ¶¶ 97-98, 114. Aterian had an ownership interest in Eaglestone, LLC. *Id*. ¶ 98. Eaglestone, LLC in turn, was the parent company of Eaglestone Holdings, LLC, Eaglestone Intermediate Holdings, LLC, Pace Intermediate, LLC, The Pace Companies New York, LLC, Pace Field Services, LLC, Pace Plumbing Corp., Pace Plumbing Delaware Corp., and other entities not involved in this litigation. *Id*. ¶ 114.

In or about 2024, Defendants, in consultation with BMO, brought in consultants from Portage Point Partners, Garrett Spriggs and Mark Burger, to assist with running Defendants' business. *Id*. ¶ 154. Fieldstone, Spriggs, and Burger were all involved in the day-to-day and financial decisions of the Pace Defendants and Eaglestone, LLC. *Id*. ¶ 155. Fieldstone, Spriggs, and Burger consulted with Eaglestone, LLC's and the Pace Defendants' executives and employees on a weekly basis to decide what and who to pay, for example. *Id*. ¶ 156.

Fieldstone, Spriggs, and Burger called upon employees and executives of Eaglestone, LLC and the Pace Defendants to provide them with data and information related to the operations of Eaglestone, LLC and the Pace Defendants, including information on the cost of outstanding work and work that had been completed on various projects, contract terms, the subcontractors working with Defendants, and billing and collection status of jobs. *Id*. ¶ 159. For the months leading up to the closure of Eaglestone, LLC and the Pace Defendants, the CEO of Eaglestone, LLC, Jason Richards, reported to Fieldstone, Spriggs, and Burger. *Id*. ¶ 162.

Richards advised the employees of Eaglestone, LLC and the Pace Defendants that various decisions were out of his control, as they were determined by "corporate" – referring to Fieldstone, Spriggs, and Burger. *Id*. ¶ 163. The CFO of the Pace Defendants, Derrick Flanagan, did the same. *Id*. ¶ 164. One such decision that was out of the hands of Eaglestone, LLC and the Pace Defendants was Defendants' decision not to sell a division of Defendants' business to an interested Class Member in about August 2024. *Id.* ¶ 153.

## ARGUMENT

**I.    Standard of Review**.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the "'complaint must contain sufficient factual matter,'" to plausibly state a claim to relief. *Drip Cap., Inc. v. JY Imports of NY Inc.*, 348 F.R.D. 536, 544 (E.D.N.Y. 2025) (Reyes, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on the face of the complaint when the factual allegations permit "'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* The factual allegations need not be "detailed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). But conclusory statements and formulaic recitations of the cause of action's elements will not suffice. *Id*. At this stage, courts deem the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Id*.

**II.    The Allegations in Plausibly Allege that Aterian is an Employer Liable for the Alleged Violations of the WARN Acts.**

Courts balance the following non-exclusive factors from the Department of Labor regulations to determine whether an affiliated entity is in a single employer relationship under the WARN Acts: (i) common ownership; (ii) common directors/officers; (iii) de facto exercise of control; (iv) unity of personnel policies emanating from a common source; and (v) dependency of operations. *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 226 (2d Cir. 2013) (citing 20

4

C.F.R. §639.3(a)(2)); *see, e.g.*, *Fleming v. Bayou Steel Bd. Holdings II L.L.C.*, 83 F.4th 278, 294-300 (5th Cir. 2023) (applying five factor test to private equity firm and holding summary judgement improper); *Hampton v. Navigation Cap. Partners, Inc.*, 64 F. Supp. 3d 622, 627-29 (D. Del. 2014) (applying five factor test to private equity firm and holding dismissal improper).

In balancing these factors on a Rule 12(b)(6) motion, courts "do not weigh the strength of the evidence, but rather assesses only whether the [complaint] alleges facts which, if true, would permit a reasonable factfinder to find [the putative employer] liable under the WARN Act." *Garner v. Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 376 (S.D.N.Y. 2017). No one factor is controlling. *Chain v. N. E. Freightways, Inc.*, No. 16 Civ. 3371, 2020 WL 7481142, at *11 (S.D.N.Y. Dec. 18, 2020), *adopted*, 2021 WL 5051656 (S.D.N.Y. Nov. 1, 2021). Though all factors need not weigh in the plaintiff's favor for liability to attach "the first two factors . . . are given less weight than the last three . . . ." *Id*. The key inquiry is whether the corporations at issue are alleged to have functioned as a single entity in deciding to terminate the workers whose rights were allegedly violated under the WARN Acts. *See id*. (citing *Guippone*, 737 F.3d at 226).

As set forth below, the Complaint meets this standard because, taken together, Plaintiffs' Complaint plausibly alleges that Aterian: (1) owned Eaglestone, LLC, which in turn owned the other Defendants; (2) exercised control over the other Defendants; (3) was a decisionmaker responsible for the abrupt termination of the putative Class in violation of the Warn Acts; and (4) was involved in the day-to-day operations and financing of the other Defendants.

**A. Factor 1: The Complaint Alleges Common Ownership as Aterian is Alleged to have an Ownership Interest in Eaglestone, LLC, which, in turn, Owned the Subsidiary Defendants.**

The common-ownership factor considers whether an entity directly owns a separate corporate entity. *Garner*, 260 F. Supp. 3d at 376-77. This factor is not given much weight, as stock ownership alone does not require a finding of liability and entities without any ownership

5

interest, such as management companies, may also be employers. *Austen v. Catterton Partners V, LP*, 709 F. Supp. 2d 168, 174 (D. Conn. 2010) (citing *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 141 (S.D.N.Y. 2004) (Lynch, J.) and *Local 217, Hotel & Rest. Empls. Union v. MHM, Inc.*, 976 F.2d 805 (2d Cir.1992)).

The putative employer's ownership interest need not be in the employees' immediate employer. For example, in *Austen*, this factor weighed in the plaintiffs' favor where the plaintiffs alleged that the putative employers, the Catterton defendants, owned the parent company, referred to as Dough, but not two of the subsidiaries that Dough owned. *Austen*, 709 F. Supp. 2d at 174. Likewise, in *Garner*, the court found this factor for the plaintiffs where defendant Berhman Brother Management Corp.'s subsidiary, Behrman Borthers IV, LLC, owned Atherotech Holdings, Inc., which, in turn, wholly owned Atherotech, Inc. *Garner*, 260 F. Supp. 3d at 373, 377; *cf. Vogt*, 318 F. Supp. 2d at 141 (the six "grandparents" of the immediate employer, OMC, were merely "investment vehicles that own[ed] interests" in three "investment companies" that were found to commonly own OMC).

This factor weighs in Plaintiffs favor because Plaintiffs allege that Aterian had an ownership interest in Eaglestone, LLC (ECF No. 8 (Amd. Compl.) ¶¶ 97-98, 101, 103-105, who, in turn, is the parent company of the remaining Defendants. *Id.* ¶ 114.

### B. Factor 2: That Plaintiffs Did Not Allege that Aterian and the Remaining Defendants Shared Officers and Directors Is Not Dispositive.

Although Plaintiffs allege, as outlined in the facts above and discussed below, that Aterian and Fieldstone exercised control over the other Defendants, Plaintiffs did not specifically allege that Aterian's directors and officers were officers and directors of the other Defendants. Thus, the second factor, admittedly, weighs against Plaintiffs. This factor, however, is of "limited importance." *Vogt*, 318 F. Supp. 2d at 141.

6

### C. Factor 3: Plaintiffs Allege Specific Instances and Forms of Aterian's De Facto Control.

The de facto control factor garners significant weight. *Chain*, 2020 WL 7481142, at *14. It is "perhaps the most important prong" of the test. *Austen*, 709 F. Supp. 2d at 177. The ordinary trappings of a parent's exercise of control over a subsidiary is not the key inquiry. *Vogt*, 318 F. Supp. 2d 143. The heart of this factor is whether the putative employer was responsible for the decisions giving rise to the WARN Act violations. *Guippone*, 737 F.3d at 227. Thus, "'the factor is appropriately utilized . . . if the parent or lender was the decisionmaker responsible or the employment practice giving rise to the litigation.'" *Vogt*, 318 F. Supp. 2d at 143 (emphasis omitted) (quoting *Person v. Component Tech. Corp.*, 247 F.3d 471, 503-04 (3d Cir. 2001)).

The Complaint contains specific allegations showing Aterian's exercise of control over employment decisions. Aterian, by way of Fieldstone, was directly "involved in and influenced the decision to terminate the Class Members' employment." *Id.* ¶ 166. This allegation is supported by other allegations showing that Fieldstone was also deeply involved in day-to-day operations, as he "was involved in the day-to-day and financial decisions" and consulted weekly "to decide what and who to pay." *Id*. ¶¶ 155-156. He controlled decisions about work performed by employees and required regular operational reporting. *Id*. ¶¶ 157-159.

Significantly, the CEO of Defendant Eaglestone, LLC, Richard, reported directly to Fieldstone. *Id*. ¶ 162; *see also* ¶¶ 127-128 (touting Aterian's relationship with the other Defendants and Richards). The Complaint alleges that Richards advised employees that various decisions were "out of his control" as they were determined by "corporate" – referring to Fieldstone and the consultants Defendants hired. *Id*. ¶¶ 162-163. Richards, as an "Officer" of the other Defendants, executed the General Assignment for the Benefit of Creditors document on these entities behalf (*id.* ¶ 126), which was part of the process by which Pace's operations were ceased. These allegations, collectively, support the assertion that Aterian was a decisionmaker in the closure that left over 300 workers jobless.

7

The Complaint alleges Aterian's substantial control over both routine operations and major employment decisions, including the ultimate decision to terminate the workforce without proper notice. Most importantly, these paragraphs of the Complaint allege that Aterian directed the remaining Defendants to shut down their operations. These allegations, therefore, are "sufficient to warrant discovery into [P]laintiffs' claims." *Vogt*, 318 F. Supp. 2d at 144.

### D. Factor 4: The Complaint Alleges that Aterian Controlled Personnel Policies.

This factor looks to the centralized and common control of labor-management practices, like hiring, firing, payment of wages, maintaining personnel records, and involvement in collective bargaining. *Garner*, 260 F. Supp. at 377. The "decision to effect a mass layoff is the single most important personnel policy." *Garner*, 260 F. Supp. at 377 (cleaned up). "Since the purpose of WARN, as its acronym implies, is to protect workers by encouraging employers to provide advance warning of plant closings, in a sense the *only* personnel policy that the statute is concerned with is the mass layoff decision." *Vogt*, 318 F. Supp. 2d at 143 (finding factor weighed in favor of plaintiffs despite no allegations in the complaint that the defendants "controlled or even participated in the day-to-day personnel policies or daily labor operations").

Plaintiffs' allegations also satisfy the personnel-policy factor because, as discussed above, Aterian was involved in the day-to-day operations of the other defendants and the decision to terminate the Plaintiffs and putative Class. The Complaint also sets forth allegations that Eaglestone, LLC promulgated uniform workplace rules and policies across the entities. *Id*. ¶¶ 119, 121, 123-15. Although the Complaint does not allege that these policies emanated from Aterian's office or Fieldstone himself, Plaintiffs allege the Fieldstone exercised control over the decisions that impacted the labor-management policies of the other Defendants, including: (a) decisions on who to pay on a weekly basis (*id*. ¶ 156); (b) whether to retain subcontractors to take over the work performed by the putative Class Members (*id*. ¶ 157); (c) the decision to sell and not sell parts of

8

the business, including the parts employing putative Class Members (*id*. ¶¶ 151-153); and (d) the decision to bring in the consultants (*id*. ¶ 154).  These allegations are more than mere conclusions or a recitation of statutory elements, rather they paint the picture of Aterian's impact on the personnel policies affecting Class Members, including the ultimate decision to suddenly terminate their employment.  *Cf. Guippone*, *BH S & B Holdings LLC,* No. 09 Civ. 1029, 2010 WL 2077189, at \*6 (S.D.N.Y. May 18, 2010) (plaintiffs did not allege the "defendant entities controlled the day-to-day personnel policies or daily labor operations" and the remaining allegations that defendants directed the mass firing at issue were conclusory).  As such, this factor weighs in Plaintiffs' favor.

### E. Factor 5: Aterian's Investment in Eaglestone, LLC and Involvement in the Day-to-Day Operations of the other Defendants Weighs in Plaintiffs' Favor.

The fifth factor looks to integrated operations such as "sharing of administrative or purchasing services, interchanges of employees or equipment, or commingled finances." *Vogt*, 318 F. Supp. 2d at 143.  This factor involves the defendant's right to control how the other business operated each day.  *Chain*, 2020 WL 7481142, at \*13 (analyzing the evidence after a bench trial).  This factor, however, is not dispositive of liability.  *See Garner*, 260 F. Supp. at 379-80

Here, the allegations give rise to the inference that Aterian exercised day-to-day control over the other Defendants, as discussed above.  Though the Complaint does not allege that Aterian and the other Defendants shared administrative services, employees, or equipment, Plaintiffs allege that Aterian owned and invested in Eaglestone LLC.  *See* ECF No. 8 (Am. Compl.) ¶¶ 97-98, 103, 105.  Further, that Aterian describes itself as an "operationally-focused" private equity firm that works in partnership with management teams, supports the allegations that Aterian was involved in the day-to-day operations and funded the other Defendants.  *Id*. ¶¶ 101-102, 128-129, 155-156.  Taken together, this factor weighs in Plaintiffs' favor.  *See Austen*, 709 F. Supp. 2d at 176-77 (considering common ownership, financial control, and decision-making authority).

9

### III. The Allegations Go Beyond Mere Labels, Conclusions, and Elemental Resuscitations.

At this stage, Plaintiffs need not exhaustively plead every detail. *See Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (reiterating that the pleading standard is plausibility, not probability, and that the complaint need only allege enough facts to show that the right to relief is not speculative). The use of allegations on "information and belief" are permissible where the underlying facts are within the defendants control or the belief is tethered to factual allegations that make the inference of culpability plausible. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

Contrary to Aterian's assertion, the Complaint provides a strong factual foundation for allegations made upon information and belief regarding Aterian's control through the concrete details. The Complaint establishes Aterian's formal relationship and authority through its ownership interest in Eaglestone LLC and public statements about its "partnership" with and operational involvement in Pace. *Id.* ¶¶ 98, 103-105, 128. The Complaint also details specific interactions showing how this control was exercised – Fieldstone regularly participated in weekly meetings to make financial and operational decisions, including "what and who to pay." *Id.* ¶¶ 155-156. It also describes how Fieldstone required regular operational reporting and controlled decisions about work performed. *Id.* ¶¶ 157-159. Most tellingly, both the CEO and CFO explicitly told employees that key decisions were "out of [their] control" because they were determined by Aterian. *Id.* ¶¶ 162-164. These concrete examples of Aterian's day-to-day involvement provide a solid factual basis for alleging "upon information and belief" that Fieldstone was ultimately "involved in and influenced the decision to terminate" the employees – a fact that can only be proven through discovery, as it is in Defendants' exclusive control. *Id.* ¶ 166.

### IV. Dismissal With Prejudice Would Be Premature.

Although the Complaint plausibly alleges that Aterian is an employer, Plaintiffs alternatively request that should the Court rule against Plaintiffs that they be given leave to amend. *See, e.g.*, *Posada v. E. Coast Cap.*, No. 23 Civ. 1579, 2025 WL 917829, at *2 (E.D.N.Y. Mar. 26, 2025) (Reyes, J.) (summary order) (granting leave to amend the complaint "include

10

enough facts in the second amended complaint to withstand another motion to dismiss"). While Aterian argues that amendment would be futile because this is Plaintiffs' second complaint, the First Amended Complaint was filed primarily to add additional Plaintiffs and subclasses, while also adding Aterian as a defendant after learning additional facts about its control over the termination decisions. *Compare generally* ECF No. 1 (Compl.) *and* ECF No. 8 (Am. Compl). This is not a case where the plaintiffs filed numerous pleadings and failed to fix their deficiencies. *Cf. United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016). This is also not a case where an amendment would be futile because the problems with the complaint could not be "cured through better pleading." *Cf. La Rosa v. Abbott Lab'ys*, No. 22 Civ. 5435, 2024 WL 2022297, at *8 (E.D.N.Y. May 7, 2024) (dismissing third amended complaint as no reasonable consumer would find the packaging deceptive), *aff'd sub nom. La Rosa v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 841687 (2d Cir. Mar. 18, 2025).

## CONCLUSION

Because Plaintiffs' Complaint sufficiently alleges that Aterian was an employer liable for the mass termination of the putative Class, Plaintiffs respectfully request that the court deny Defendants' motion to dismiss.

Dated: August 29, 2025
      Melville, New York

Respectfully submitted,

Garrett Kaske

KESSLER MATURA, P.C.
Troy L. Kessler
Garrett Kaske
534 Broadhollow Rd, Ste 275
Melville, New York 11747
(631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com

SUGAR LAW CENTER FOR ECONOMIC & SOCIAL JUSTICE
John C. Philo*
Anthony D. Paris*
4605 Cass Ave., 2nd Floor
Detroit, Michigan 48201
(313) 993-4505
jphilo@sugarlaw.org
tparis@sugarlaw.org
*pro hac vice application forthcoming

***Attorneys for Plaintiffs Michal Konopka and Dragan Bosotina and the Putative Class***

PITTA LLP
Jane Lauer Barker
120 Broadway, 28th Floor
New York, NY  10271
(tel.) 212-652-3828
(fax) 212-652-3891
jbarker@pittalaw.com

***Attorneys for Plaintiff Plumbers Union Local No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Fitting Industry of the United States and Canada***

O'DONOGHUE & O'DONOGHUE LLP
Diana Cohn
5301 Wisconsin Ave. N.W. Ste. 800
Washington, D.C. 20015
(202) 362-0041
dcohn@odonoghuelaw.com

***Attorneys for Plaintiff Trustees of the Plumbers Local Union No. 1 Welfare Fund, Trade Education Fund, 401(k) Savings Plan, United Association National Pension Fund, and International Training Fund***

## **CERTIFICATE OF SERVICE**

Pursuant to the Court's Individual Rules, I served, but did not e-file, the above Memorandum of Law on the following counsel for Defendants via email on August 29, 2025:

Adam S. Mocciolo
AKERMAN LLP
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Tel.: 212.880.3800
adam.mocciolo@akerman.com

Dustin B. Hillsley
AKERMAN LLP
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301
Tel.: 954.463.2700
dustin.hillsley@akerman.com

By,

_/s/ Garrett Kaske_
Garrett Kaske
KESSLER MATURA, P.C.
Garrett Kaske
534 Broadhollow Rd, Ste 275
Melville, New York 11747
(631) 499-9100
gkaske@kesslermatura.com

13