UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAL KONOPKA and DRAGAN BOSOTINA, and on behalf of themselves and all others similarly situated, PLUMBERS UNION LOCAL NO. 1 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND FITTING INDUSTRY OF THE UNITED STATES AND CANADA, TRUSTEES OF THE PLUMBERS LOCAL UNION NO. 1 WELFARE FUND, TRADE EDUCATION FUND, and 401(k) SAVINGS PLAN, TRUSTEES OF THE UNITED ASSOCIATION NATIONAL PENSION FUND, and TRUSTEES OF THE INTERNATIONAL TRAINING FUND,<br><br>                              Plaintiff,<br><br>    - against -<br><br>PACE PLUMBING CORP., PACE PLUMBING DELAWARE CORP., THE PACE COMPANIES NEW YORK, LLC, PACE FIELD SERVICES, LLC d/b/a PACE MECHANICAL, and EAGLESTONE, LLC d/b/a EAGLESTONE NY, LLC, and ATERIAN INVESTMENT MANAGEMENT, LP d/b/a ATERIAN INVESTMENT PARTNERS,<br><br>                              Defendants. | 1:25-cv-00811-RER-CLP |

**REPLY MEMORANDUM IN SUPPORT OF**
**<u>DEFENDANT ATERIAN'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

IV. CONCLUSION ............................................................................................................... 8

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................................................. 5

*Austen v. Catterton Partners V, LP*,
 709 F. Supp. 2d 168 (D. Conn. 2010) ............................................................................... 2, 3, 4

*Chain v. N. E. Freightways, Inc.*,
 No. 16 CIV. 3371 (JCM), 2020 WL 7481142 (S.D.N.Y. Dec. 18, 2020) ......................... 2, 3, 4

*Garner v. Behrman Bros. IV, LLC*,
 260 F. Supp. 3d 369 (S.D.N.Y. 2017) ............................................................................... 2, 3, 4

*Guippone v. BH S & B Holdings LLC*,
 737 F.3d 221 (2d Cir. 2013) ....................................................................................................... 4

*In re Transcare Corp.*,
 614 B.R. 187 (Bankr. S.D.N.Y. 2020) .................................................................................. 1, 4

*Sharikov v. Philips Med. Sys. MR, Inc.*,
 103 F.4th 159 (2d Cir. 2024) ..................................................................................................... 5

*Vogt v. Greenmarine Holding, LLC*,
 318 F. Supp. 2d 136 (S.D.N.Y. 2004) ............................................................................... 2, 3, 4

The plaintiffs' opposition to defendant Aterian Investment Partners L.P.'s ("Aterian"'s) motion to dismiss is as hazy as the complaint that has given rise to the motion. The plaintiffs concede, as they must, that one of the five factors in the "single employer" WARN Act test weighs against them because they have made no allegations that Aterian shared officers and directors with the other defendants. They concede, as they must, that Aterian is not a direct parent company of any of the other defendants, arguing instead that this factor does not weigh against them because not every court that has addressed the corporate parentage factor requires such direct ownership. Nonetheless, the case law they cite is against the weight of authority. As to the remaining three factors, they invite the court to find in their pleading a concrete allegation that they simply have not made: that Aterian's principal Michael Fieldstone <u>made decisions</u> about the operations of the underlying businesses and about whether to discharge the plaintiffs, rather than merely being consulted on and being advised of such matters as part of the "incidents of stock ownership," which the law holds insufficient for WARN Act liability. *In re Transcare Corp.*, 614 B.R. 187, 204 (Bankr. S.D.N.Y. 2020).[1]

Because the complaint does not concretely allege that Aterian was the decision maker on the acts and policies within those three factors, the complaint does not reach the extraordinary

---

[1] Given the procedural posture of the motion to dismiss, this reply memorandum and Aterian's prior briefing are focused on the insufficiency of plaintiffs' allegations as stated in the complaint. Nonetheless, it bears noting that were the case to proceed past the motion to dismiss, the claim against Aterian would be futile. Evidence will demonstrate that by the time of the decision to lay off the plaintiffs, BMO Bank, the lender referred to in paragraph 154 of the complaint, and an independent director, had indisputably taken control of the businesses, under authority given to BMO in its credit agreement. Aterian was unable at that time even to exercise the ordinary influence of an investor or director, let alone the extraordinary control needed for single-employer liability. In parallel with moving to dismiss, Aterian has advised the plaintiffs of this and provided corroborating documentation.

standard of alleging Aterian's co-identity with employing defendants. Accordingly, the plaintiffs' claims against Aterian must be dismissed.

I. **THE CASE AUTHORITY THAT EXPRESSLY ADDRESSES THE QUESTION REQUIRES IMMEDIATE CORPORATE PARENTAGE**

Courts that have confronted the question of how close the corporate relationship must be between affiliated companies in order for the "common ownership" factor of the single-employer test to support liability have clearly held that "[o]wnership must be direct and cannot be held through other investment companies." *Chain v. N. E. Freightways, Inc.*, No. 16 CIV. 3371 (JCM), 2020 WL 7481142, at *11 (S.D.N.Y. Dec. 18, 2020), *report and recommendation adopted*, No. 16 CV 3371 (VB), 2021 WL 5051656 (S.D.N.Y. Nov. 1, 2021); *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 142 (S.D.N.Y. 2004) (finding common ownership only for the three "investment vehicles" that actually owned stock in the allegedly culpable entity, but not for the other parties that were "at best grandparents" of the entity). Here, the plaintiffs' <u>concede</u> that Aterian is <u>not</u> the direct, immediate parent of any other defendant. Opp. at 6 ("Aterian had an ownership interest in Eaglestone, LLC … [which], in turn, is the parent company of the remaining Defendants.") To try to salvage their position, however, they cite to two cases in purported support of the proposition that a putative single employer defendant's "ownership interest need not be in the employees' immediate employer" in order for this factor to weigh in a plaintiff's favor: *Austen v. Catterton Partners V, LP*, 709 F. Supp. 2d 168, 174 (D. Conn. 2010) and *Garner v. Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 376-77 (S.D.N.Y. 2017). Opp. at 5-6. These decisions do not support the plaintiffs' position because they do not reflect that the directness of corporate parentage was contested by the parties in the cases before those courts, nor that the courts were examining whether ownership was "direct" in the sense of "immediate." This court should disregard those

2

decisions in favor of the weight of authority from cases expressly examining the immediacy of ownership and finding that only immediate, next-level parentage satisfies the factor.

In finding that the allegations against one of the *Austen* defendants who had moved to dismiss the single-employer claims against them met the "common ownership" factor of the test, the court briefly observed that the defendant held its interest in the employing entity through an intermediate holding company. The meaning of this holding must be understood, however, by reading further into what the court <u>was contrasting such ownership against</u>. The next paragraph of the decision goes on to examine the allegations against the other movant, a third-party management company that the first movant had allegedly engaged to carry out the operations of the employing companies. Observing that the plaintiffs had not alleged that the management company owned the employing companies, the court found that the common ownership factor was not satisfied as to the management company. That is, the *Austen* court was not examining the <u>degree of remove</u> at which those defendants held their ownership of the employing entities, but whether they were owners at all. The decision does not use words like "direct" or "immediate," nor give any indication that the "tier" of ownership was contested by the parties.

*Garner* similarly does not reflect any deliberate consideration of immediacy of ownership. In finding that direct ownership was alleged, it only remarked cursorily that the complaint "alleg[ed] that Berhman acquired Atherotech in 2010 and publicly disclosed a 90% ownership interest." 260 F. Supp. 3d at 377. The statement to which the plaintiffs cite, which mentions an intermediate holding company between the two, appears briefly in the summary of facts preceding the *Garner* court's discussion of the test. *Id.* at 373. The existence or nonexistence of such an intermediary is not even raised in the court's discussion of the common ownership factor. Neither does that discussion contain any analysis of the legal standard for the factor itself, reflect that the

3

parties were contesting immediacy of ownership as applied to that case, or otherwise give any indication that the *Garner* court was assessing such immediacy, as opposed to, like the *Austen* court, the simple fact that ownership existed.

Accordingly, in determining whether the first factor of the test depends on immediate ownership, the court should rely on cases like *Chain* and *Vogt* that have actually examined the question, not on *Austen* or on the plaintiffs' misreading of *Garner*. The cases that speak specifically to that question hold that only immediate, next-tier ownership can satisfy this factor. As it is not in dispute that Aterian did not immediately own the employer entities at issue here, the common ownership factor weighs in favor of dismissing the complaint against Aterian.

## II. ALLEGATIONS OF "INVOLVEMENT" AND "CONSULTATION" DO NOT SUFFICE; THE TEST FACTORS REQUIRE <u>CONTROL</u> AND <u>DECISION-MAKING</u>

The plaintiffs' opposition attempts at length to dress up allegations that Aterian and Mr. Fieldstone consulted on and were advised of decisions made by the employer companies as something that they are <u>not</u>: allegations that Aterian <u>decided</u> operational actions, shared policies, and, most importantly, whether to cease doing business and lay off the plaintiffs and the putative class members. The case law is clear about this distinction and its importance. The single-employer test can only be satisfied where "one company was the <u>decision-maker</u> responsible for the employment practice giving rise to the litigation." The test "is <u>not</u> intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership." *In re Transcare Corp.*, 614 B.R. at 204 (emphases added); *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 227 (2d Cir. 2013) ("The [de facto control] factor is appropriately utilized, however, if the parent ... was <u>the</u> decision-maker responsible for the employment practice giving rise to the litigation … [This] prong allows the factfinder to consider whether the parent has specifically

4

<u>directed</u> the allegedly illegal employment practice that forms the basis for the litigation.") (emphases added).

The court can readily determine that these plaintiffs' allegations fall on the fatal side of the distinction by focusing on which allegations in their complaint elaborate on underlying facts, and which ones merely recite conclusions. Only the allegations that say that the employer defendants consulted with Aterian or kept it informed provide supporting factual detail. For example, where paragraph 159 of the First Amended Complaint alleges that "Fieldstone, Spriggs, and Burger called upon employees and executives of Eaglestone, LLC and the Pace Defendants to provide them with data and information related to the operations," the complaint goes into considerable detail about what this information allegedly was. It refers to "information on the costs of outstanding work and work that had been completed on various projects, contract terms, the subcontractors working with Defendants, and billing and collection status of jobs." Putting aside whether any of those specific allegations are true, they convey to the court and the litigants a meaningful sense of what "context-specific" factual allegations "plausibly give rise to an entitlement to relief" to the extent that any relief could be premised on that particular paragraph. *Ashcroft v. Iqbal*, 556 U.S. 662, 79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024).

This contrasts strongly with the only three paragraphs of the complaint that might be read to say that Aterian <u>decided</u> matters:

¶ 158: "Fieldstone … had meetings with Eaglestone, LLC and the Pace Defendants[ ] … to make decisions about the work Class Members were performed [sic]";

¶ 165: "Upon information and belief, Fieldstone, Spriggs, and Burger were involved in the decisions to sell off various parts of Defendants' businesses";

5

> ¶ 166: "Upon information and belief, Fieldstone, Spriggs, and Burger were involved in and influenced the decision to terminate the Class Members' employment and disregard the obligations of the WARN Act."

Again, none of these can be properly read as allegations that Aterian made the decisions in question. Neither "meeting about" nor "influencing" a decision is the same thing as <u>making</u> it. And the very fact that the plaintiffs add the "and influenced" qualifier in paragraph 166 reflects that not even they think that simply being "involved in" the decisions constitutes having made them. But even if the court were inclined to read these paragraphs as asserting that Aterian actually made the decisions, the allegations would be insufficient to state a claim against Aterian because they do not provide any supporting alleged factual detail by which the court can assess the plausibility of an assertion that it was Aterian who decided. This lack of essential supporting factual allegations is perhaps most striking in paragraph 164, the plaintiffs' allegation that when Pace Defendants CFO Derrick Flanagan supposedly advised employees that decisions were out of his control and made by "corporate," he was referring to Aterian. Opp. at 10. <u>Nothing</u> in the complaint explains the plaintiffs' factual leap to the conclusion that "corporate" means Aterian. It is simply asserted on their own speculation.

The plaintiffs' briefing reflects awareness of the distinction between consultation and decision-making, and they tacitly concede that they have not actually pleaded decision-making. Pages 8 to 9 of the opposition, for example, list out a number of allegations that the plaintiffs argue satisfy the personnel policies factor of the test. While conceding that "the Complaint does not allege that these policies emanated from Aterian's office or Fieldstone himself," the plaintiffs argue that these allegations, if taken as true, show that "Fieldstone exercised control over the decisions that impacted the labor-management policies of the other Defendants." In the first place, this is nonsensical; if the allegation is not that Aterian set the policies, how else would it have

6

"controlled" them? In recapitulating those allegations for the court, however, the plaintiffs have also amplified their pleading with a word that does not appear in the text of the allegations that the cite: "control." What the complaint actually alleges is that Aterian "consulted" about who to pay (¶ 156) and "had meetings" about subcontractors (¶ 157). The same pattern shows itself at page 10 of the opposition, where plaintiffs argue that the complaint alleges that "Fieldstone required regular operational reporting and controlled decisions about work performed," citing to paragraphs 157 through 159 of the complaint. What those paragraphs actually say is that Mr. Fieldstone and others "had meetings" and asked to be "provide[d] with data and information." That plaintiffs need to recast the language of their own pleading to try to bolster their opposition to the motion to dismiss reveals that the allegations as actually pleaded do not support a claim of single-employer liability against Aterian.

Because the complaint does not adequately allege that Aterian actually made the relevant decisions and exercised the requisite control, the complaint satisfies none of the de facto exercise of control, unity of personnel policies, and dependency of operations factors.

### III. THE COMPLAINT AGAINST ATERIAN SHOULD BE DISMISSED WITH PREJUDICE

Whatever the reason why the plaintiffs "primarily" filed their First Amended Complaint, Opp. at 11, the fact remains that in doing so, they amended their existing single-employer claim to try to extend liability to Aterian. They have had a fair chance to do so, on what is apparently the best information available to them. In opposing dismissal with prejudice, what they specifically do <u>not</u> say is what they might do differently given an opportunity to plead against Aterian again. This is a tacit admission that there is nothing to be done. Aterian is not a proper defendant, and after the current complaint against it is dismissed, it should not be burdened with the exercise of moving to dismiss another flawed one.

7

## IV. CONCLUSION

For all of the foregoing reasons and the reasons in Aterian's prior memorandum of law, and all those reasons to be adduced in any oral argument on this motion, the complaint fails to state claims upon which relief can be granted against Aterian, and the purported claims against Aterian should be dismissed with prejudice.

Date: New York, New York  **AKERMAN LLP**

October 20, 2025

By: /s/ *Adam S. Mocciolo*
Adam S. Mocciolo
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Tel.: 212.880.3800
adam.mocciolo@akerman.com

Dustin B. Hillsley (pro hac vice motion forthcoming)
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301
Tel.: 954.463.2700
dustin.hillsley@akerman.com

*Attorneys for Defendant Aterian Investment Management L.P.*

**CERTIFICATION**

      Pursuant to Local Civ. Rule 7.1(c), I certify that this memorandum contains 2,366 words, exclusive of the caption and cover page, tables of contents and authorities, the signature block, and certifications, as measured by Microsoft Word's word-counting function.

*/s/ Adam S. Mocciolo*
Adam S. Mocciolo

      The foregoing was served on counsel of record by email to accompany the movant's letter requesting a pre-motion conference, or mailed to any counsel/parties unable to accept electronic notices. This document will be electronically filed with the court in accordance with any schedule set by the court

*/s/ Adam S. Mocciolo*
Adam S. Mocciolo

9